COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
 ECHOSTAR SATELLITE
 L.L.C. AND
 DISH NETWORK, L.L.C.,
  
                            
 Appellants,
  
 v.
  
  
 RAY AGUILAR,
  
                            
 Appellee.
 
 
 §
  
 §
  
 §
  
 §
  
 §
  
  § 
  
 
 
  
 No. 08-10-00328-CV
  
 Appeal from the
  
 County
 Court At Law No. 6
  
 of El
 Paso County, Texas 
  
 (Cause No.
 2007-017)
  
 
 


 

O
P I N I O N

            Appellants Echostar Satellite L.L.C. and Dish
Network Service, L.L.C. (“Appellants”), appeal a jury verdict and judgment
rendered in favor of Ray Aguilar (“Aguilar”). 
Appellants bring five issues:  (1)
legal and factual insufficiency of Aguilar’s evidence that Appellants’ uniform
application of their absence control policy was a violation of Chapter 451 of
the Texas Labor Code; (2) insufficient evidence to support Aguilar’s claim of
retaliation under Chapter 451 of the Texas Labor Code; (3) error by the trial
court in giving a constructive discharge instruction in a termination case; (4)
error by the trial court in admitting improper and prejudicial character
evidence; and (5) insufficient evidence to support the jury’s award of punitive
damages.  For the reasons that follow, we
affirm in part and reverse and render in part.

PROCEDURAL
BACKGROUND

            Aguilar
brought suit for wrongful termination in violation of the Anti-Retaliation Law,
Texas Labor Code Chapter 451 (Tex.Lab.Code
Ann. § 451.001 et seq.), initially
alleging claims for workers compensation retaliation and intentional infliction
of emotional distress.  He later filed a
Third Amended petition claiming only a violation of Section 451.001 of the
Texas Labor Code.  Appellants filed a
motion for summary judgment, which the trial court denied based on its finding
that a jury could determine that Appellants’ absence control policy was not
uniformly applied to Aguilar.

The trial was held
on June 21 through June 25, 2010, and the jury rendered a unanimous verdict in Aguilar’s
favor, finding that Appellants terminated him in violation of Section
451.001.  The jury determined that
Aguilar suffered actual damages of $120,000.00, pre-judgment interest of $16,187.67,
and assessed exemplary damages of $750,000.00. 
The trial court reduced the exemplary damages to $200,000.00[1]
and entered judgment on the verdict.  Appellants filed a motion for judgment
notwithstanding the verdict and a motion for new trial, both of which were
denied by the trial court.  Appellants
timely appealed.

FACTUAL
BACKGROUND

            Aguilar began working for Appellants in
February of 2000 as a customer service representative at the company’s call
center in El Paso, Texas.  In May of
2004, he was granted a transfer to the installation depot, where he worked as a
satellite installer.  Aguilar’s
supervisor was Ruben Fragoso (“Fragoso”), who reported to Tommy Rivers
(“Rivers”), the manager of the installation department.  In November of 2004, Aguilar signed an acknowledgment
of his receipt of Appellants’ absence policy, which provided that any employee
who failed to call in or show up for work on their scheduled day for three days
in a row would be terminated for “job abandonment.”  Aguilar testified that he understood it was
Appellants’ policy to reprimand and terminate employees under the absence-control
policy if employees did not show up for work or call in.  At trial, Jeannette Alonzo, Appellants’
senior human resources manager, testified that employees who failed to report
to work for three days in a row are terminated for job abandonment.  Linda Lucero (“Lucero”), a human resources
department representative for the El Paso installation center, testified
that Appellants’ “No Call/No Show” policy was applied to all employees across
the board, regardless of whether or not the employee had filed a workers’
compensation claim.

            Appellants conducted
safety meetings at the installation depot, which took place, depending on
workload, twice a week.  Meetings were
often held in the mornings, before installers began working.  At these meetings, Aguilar stated his concern
about safety practices and conditions, but received negative reactions from
management when he did so.  Fragoso
testified that Aguilar complained about the extent of overtime required.  Fragoso also testified that Aguilar was a
“very good installer” and was “the best or one of the best.”  Rivers also testified that Aguilar was a good
worker.

            During June of 2005, Rivers
“challenged” his installation team, including Aguilar, to take a FSS II[2] test.  Whoever passed the test would receive a raise
of one dollar per hour.  Aguilar took and
passed the exam.  However he was advised
that he would not receive the raise due to the fact that his pay rate was
already equal to that of a FSS II.  Aguilar
was advised that in order to receive a raise, he would need to take and pass
the FSS III test.  Aguilar testified that
he learned of the results in July of 2005 and that he was frustrated when he realized
he would not get a raise.  Aguilar spoke
to Rivers about the unfairness of the situation in early July 2005, when he
learned of the denial.

            During the morning of
September 14, 2005, a safety meeting was held which, according to Rivers, Aguilar
attended.  Fragoso and Lucero were also
present.  Aguilar testified that he did
not recall a meeting that morning.[3]  Rivers stated that the subject of the safety
meeting was the proper way to carry the ladders[4]
assigned to installers.[5]  According to Rivers and Lucero’s deposition
testimony, Aguilar appeared disgruntled, was shaking his head, saying “this
isn’t fair,” huffing and sighing during the meeting.

            Aguilar left the
installation depot, resolved several “trouble” calls and proceeded to a
customer’s house to begin an installation. 
While at the house, he picked up his ladder and a bucket of tools when he
felt a “pinch” in his lower back.  Aguilar
tried to walk it off, but when the pain would not go away, he called in the
injury to the installation depot. 
Rivers called Aguilar and referred him to Appellants’ workers’
compensation doctor.  Aguilar was
diagnosed with a lumbar strain and was released back to work on the same day,
with medical restrictions that included:  no repetitive lifting over 10 pounds; no
bending greater than zero times per hour; and no pushing and/or pulling over 15
pounds of force.  The physician’s note
also indicated that Aguilar would reach maximum medical improvement on October
14, 2005, that he was to receive therapy, and that the treatment was authorized
by Rivers.

            Aguilar
returned to the depot that afternoon and was asked to prepare an incident
report by Rivers.  The report was signed
by Rivers and Aguilar.  Rivers told Aguilar
to take the next day off and return the following day.  Fragoso testified that he felt Aguilar’s injury
was legitimate, and that he was “hundred percent sure” that Aguilar was telling
the truth and was not faking the injury. 
Fragoso further testified that Aguilar should not have been carrying his
ladder and tools at the same time because doing so was a violation of company
policy.  He did not reprimand Aguilar for
doing so despite the policy violation being a common way for injuries to occur.
 Fragoso testified that Aguilar followed
all internal procedures relating to his injury.  Rivers provided similar testimony.

            Aguilar
returned to work on “light duty” status in the office of the installation
department, answering phones, but not returning to the field.  Within a few days of this assignment, Aguilar
testified that Rivers, Fragoso, and other workers began mocking his injury.  This included Rivers announcing “[d]oes
everybody here know how to carry a ladder, hint hint?” and asking Aguilar for
copies and then stating “[c]an you make a copy of this? Are you sure you can
carry it?”  Aguilar stated that Rivers
also complained to Aguilar:  (1) about
how his injury created a negative financial impact on the installation
department; (2) that Rivers could not afford Aguilar being in the office and
not performing installations; (3) that Aguilar’s injury was disrupting the
department’s quota system; and (4) that Aguilar’s inability to do installations
was costing Appellants money.  Appellants
presented testimony from Gabriel Alderete, Appellants’ field service manager,
who testified that Rivers was a firm but fair manager and he never saw Rivers
treat Aguilar different than any other employee.  Fragoso testified that he did not recall
Rivers, any co-workers, or Fragoso himself making any negative comments.

            During
this time, the workers’ compensation insurance carrier, ESIS, requested
additional information from Appellants. 
Rivers advised ESIS that Aguilar had been upset about the denial of a
pay raise following the FSS II exam. 
ESIS determined that Aguilar had filed his workers’ compensation claim
in retaliation for a personnel dispute, and on September 20, 2005, denied the
claim.  Internal emails indicate that on
September 21, 2005, Rivers and Fragoso were included in emails advising that
the claim had been denied.

            Within
a week of his injury, Fragoso and Rivers suggested that Aguilar transfer back
to the call center.  Eight days after his
injury, on September 22, Fragoso presented Aguilar with a transfer request
which Aguilar, Fragoso, and Rivers signed. 
Aguilar testified that he signed the request, not because it was his
idea, but because he felt it was the type of work he could physically do.  Fragoso testified that even when a transfer
request is signed and approved, a transfer may take three to five months.  Aguilar testified he was never contacted
regarding the transfer.  .          

            The
next day, September 23, 2005, Rivers called Aguilar into his office.  Rivers told Aguilar that he “had to tell the
insurance company about the incident that we had back in July when [Aguilar]
didn’t get [a] pay increase.”  Aguilar
stated that Rivers told him that he was costing the company too much money and
that the workers’ compensation claim was going to be denied because Aguilar was
retaliating against the company because he did not get his pay raise.  Aguilar panicked and tried to convince Rivers
that the accusation was false.

            Aguilar
stated that during the meeting Rivers became irritated, aggressive and angry
toward Aguilar and gave him an ultimatum:  “if you can’t go do installs, then you’re
fired.”  Aguilar, feeling panicked,
nervous, and afraid, told Rivers he could not do installs because he was
injured, but Rivers repeated the ultimatum. 
Aguilar did not believe he could return to work as an installer without
violating the company doctor’s restrictions and/or possibly injuring himself
further.

            Aguilar
begged Rivers not to fire him, and fearing for his job asked to speak to Human
Resources.  Rivers called Debra Pierce
(“Pierce”), Appellants’ workers’ compensation coordinator, and placed her on a
speaker phone.  Rivers told Pierce that Aguilar
did not want to return to his regular duties, while Aguilar advised Pierce of
the ultimatum.  Pierce proposed that Aguilar
“could go on leave without pay,” specifically that he could be placed on leave
under the Family Medical Leave Act (“FMLA”).[6]  Aguilar testified that he did not fully
understand FMLA, but felt pressure because he was his family’s sole source of
income.  Rivers presented Aguilar with a
FMLA request form and instructed him on how to fill out the form.  Aguilar, feeling intimidated, complied and in
the section of the form requiring him to give a reason, Rivers instructed him
to write “hurt my back.”  The form
indicates FMLA leave was requested from September 23 to October 14, 2005 (the
actual date given by Aguilar’s doctor for his date of maximum medical
improvement).  Rivers “approved” the
request and signed the form.  Rivers then
instructed Aguilar to go home.

Appellants sent a
copy of the approved FMLA paperwork to Aguilar via the U.S. mail, and Aguilar
testified that he read it.  The FLMA leave
request form states:  “It is the
employee’s responsibility to notify the company prior to the scheduled end of
leave in order to coordinate job restoration. 
Failure to return from leave on scheduled return date may result in termination
of employment.”  Aguilar testified that
he stayed in contact with Appellants by calling and leaving a single message
regarding the status of his medical treatment, but that the call was made after
business hours and was left on a machine because he was embarrassed and did not
want to speak to anyone.  Aguilar did not
follow-up with a letter, email or fax and did not submit any FMLA extension forms,
testifying that he did not know he was required to do so.  Lucero testified that she called Aguilar on
October 1, 2005 and left him a message requesting notice of his intent to
return.  Rivers and Fragoso testified
that they made several unreturned calls to Aguilar regarding his ability to
return to work.  Aguilar testified that
he did not receive any calls or messages from Appellants while he was on FMLA
leave.  There is no record of the
attempts to contact Aguilar made by Appellants. 
Aguilar received checks paying out his accrued paid-time off while he was
on FMLA leave.

            Aguilar
obtained assistance from the Workers’ Compensation Commission and was assigned
an ombudsman, who set up meetings to prepare for a hearing on Aguilar’s
claim.  Aguilar testified that, despite
his injury, he had no choice but to look for a temporary job while the workers’
compensation case was resolved.[7]  Aguilar testified that he obtained employment
at Affina in their call center, with the expectation that he would go back to
work for Appellants.  Aguilar began
working for Affina on October 10, 2005, and remained with them for less than a
month, then began working at Manpower. 
Subsequently, he took a job with Honeywell.  Aguilar did not disclose his injury on his job
application to Affina, and indicated to Honeywell that he worked for Appellants
until “10/2005” and was “looking for a better--better opportunity.”  Aguilar never returned to work for Appellants.

            Approximately
three weeks after the expiration of his FMLA leave, Appellants terminated Aguilar
for “job abandonment.”  The termination
paperwork was processed by Rivers, indicating that Aguilar’s medical leave had
expired and that Aguilar had failed to notify Appellants of his employment
status.

Appellants’ policy
was to notify employees in writing advising them of the expiration of their
leave before termination.  Appellants
stipulated that they did not comply with their policy in terminating Aguilar.  Aguilar testified that he did not know he had
been terminated until he received notice that his satellite service, a benefit
for Appellants’ employees, had been discontinued.

At trial, over
Appellants’ objection, a former employee named Lawrence Chavez (“Chavez”) testified
regarding the absence control policy.  Chavez
was injured while working as an installer and was terminated for job
abandonment.  Chavez testified that he
disagreed with the diagnosis of the workers’ compensation doctor and that
Chavez was afraid to drive his work van. 
Chavez was terminated April 14, 2005 and testified that he had no
personal knowledge of Aguilar’s injury, claim or any knowledge about Aguilar’s
termination or the decision-making behind it. 
Chavez’s testified that he heard Rivers and other supervisors make
racial slurs, such as “Lazy Mexican” and call another employee a “pussy” and
“worthless.”  Chavez also testified that
Appellants would “figure out a way” to get rid of injured employees, and that
employees were treated like “slaves.”

            Following
the trial, the jury found that:  (1) Appellants
discriminated against Aguilar because he filed his workers’ compensation claim
in good faith; (2) Aguilar was entitled to lost wages, lost future earnings,
and compensatory damages; and (3) that there was clear and convincing evidence
that Appellants maliciously harmed Aguilar. 
Judgment was entered, including exemplary damages (as reduced).  Appellants filed a Notice of Appeal on
November 2, 2010.  On November 16, 2010, the
trial court heard Appellants’ motion for judgment notwithstanding the verdict
and motion for a new trial, both of which it denied.

DISCUSSION

I.                  
Absence Control Policy 

Appellants’ first issue alleges there is no
evidence of a violation of Chapter 451 of the Texas Labor Code because
Appellants uniformly enforced their absence control policy.

On appeal, a legal
sufficiency or “no evidence” challenge will be sustained if the party suffering
the adverse decision at trial shows:  (1)
the complete absence of a vital fact; (2) the court is barred by rules of law
or evidence from giving weight to the only evidence offered to prove a vital
fact; (3) the evidence offered to prove a vital fact is no more than a
scintilla; or (4) the evidence establishes conclusively the opposite of the
vital fact.  City of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005); El Paso Independent School District v. Pabon,
214 S.W.3d 37, 41 (Tex.App.--El Paso 2006, no pet.).  The jurors are the sole judges of the weight
and credibility of witness testimony and if the evidence at trial would allow
reasonable, fair-minded jurors to differ in their conclusions, then jurors must
be allowed to do so.  City of Keller, 168 S.W.3d at 819, 822; Pabon, 214 S.W.3d at 41.  When evidence falls within the zone of
reasonable disagreement, a reviewing court cannot substitute its own judgment
for that of the trier of fact.  City of Keller, 168 S.W.3d at 819; Pabon, 214 S.W.3d at 41.  However, if the evidence allows for only one
inference, neither the jurors nor the reviewing court may disregard it.  City of
Keller, 168 S.W.3d at 822; Contreras
v. Bennett, 361 S.W.3d 174, 179 (Tex.App.--El Paso 2011, no pet.)(noting
same standards).

In a factual sufficiency review, we examine
all the evidence in the record, both for and against the lower court’s
findings, and reverse only if it is so against the great weight of the evidence
as to be clearly wrong and unjust.  Ortiz v. Jones, 917 S.W.2d 770, 772
(Tex. 1996);

Newberry v. Newberry,
351 S.W.3d 552, 555-56 (Tex.App.--El Paso 2011, no pet.)(noting same).

Section 451.001 of
the Texas Labor Code is a statutory exception to the common-law doctrine of
employment-at-will applied in Texas.  Jenkins v. Guardian Industries Corp., 16
S.W.3d 431, 435 (Tex.App.--Waco 2000, pet. denied).  The purpose of this section is to protect
persons entitled to benefits under the Workers’ Compensation Act by preventing
them from being discharged for filing claims to collect those benefits, and
thus has both remedial and deterrent effects.  Trico
Technologies Corp. v. Montiel, 949 S.W.2d 308, 312 (Tex. 1997).

Section 451.001 provides that:

A
person may not discharge or in any other manner discriminate against an
employee because the employee has:

 

(1)
filed a workers’ compensation claim in good faith;

 

(2)
hired a lawyer to represent the employee in a claim;

 

(3)
instituted or caused to be instituted in good faith a proceeding under Subtitle
A; or

 

(4)
testified or is about to testify in a proceeding under Subtitle A.

 

Tex.Lab.Code Ann.
§ 451.001 (West 2006).

Employees may recover damages for
retaliatory discharge under this provision only if they prove that, absent the
filing of a workers’ compensation claim, the discharge would not have occurred
when it did.  Cont’l Coffee Products Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996);
Urquidi v. Phelps Dodge Refining
Corporation, 973 S.W.2d 400, 403 (Tex.App.--El Paso 1998, no pet.).

Appellants argue
that Aguilar failed to provide evidence that Appellants’ absence control policy
was not uniformly enforced and that as a result, there cannot be a claim under
Section 451.001 as set out in Continental
Coffee Prods. Co.

Uniform
enforcement of a reasonable absence-control provision does not constitute
retaliatory discharge under Section 451.001. 
Cont’l Coffee Prods. Co., 937
S.W.2d at 451; Texas Division-Tranter,
Inc. v. Carrozza, 876 S.W.2d 312, 313 (Tex. 1994).  If an employee’s termination is required by
the uniform enforcement of a reasonable absentee policy, then it cannot be said
that termination would not have occurred when it did but for the employee’s
assertion of a compensation claim or other conduct protected by Section
451.001. Cont’l Coffee Prods. Co.,
937 S.W.2d at 451.  Consequently, an
employer who terminates an employee for violating such a rule cannot be liable
for retaliatory discharge so long as the rule is uniformly enforced.  Cont’l
Coffee Prods. Co., 937 S.W.2d at 451.

            Aguilar,
in 2004, acknowledged that he received a copy of Appellants’ absence control
policy, that was applicable to all employees.  It provided, in relevant part:

If
an employee does not call in or show up to work on their scheduled day, it is
considered a “No Call/No Show” and counts as an unexcused absence.  In the event that there are 3 “No Call/No
Shows” in a row, it will be considered job abandonment and the employee will be
immediately terminated.

 

            Aguilar’s
FMLA leave was to end on October 14, 2005. 
Aguilar testified that he called Appellants once during his FMLA leave
time and left a message after business hours. 
Prior to the expiration of his FMLA leave, Aguilar took full-time
employment with Affina.  Aguilar never returned
to Appellants place of employment after he left on September 23, 2005, and he
never requested an extension of his FMLA leave. 
Aguilar had three “No Call/No Show” days following his failure to return
to work.  Subsequently, Rivers
recommended that Appellant terminate Aguilar’s employment.

            Aguilar
argues that the absence policy was not uniformly applied, as he should have
been terminated following three “no call/no show” unexcused absences after
October 14, 2005.  In fact, Appellants’
position, as explained by Rivers during his testimony was that employees were
automatically terminated after three “no call/no shows” and that there was no
discretion in such an action.  Appellants
conceded that there was no clear reason why Aguilar was not terminated as of
October 17, 2005.

            As
noted above, jurors are the sole judges of the weight and credibility of
witness testimony.  City of Keller, 168 S.W.3d at 819, 922.  More than a scintilla of evidence exists, for
the purposes of a legal sufficiency review, where the evidence supporting the
finding, as a whole, rises to a level that would enable reasonable and
fair-minded people to differ in their conclusions. Haggar Clothing Co. v. Hernandez, 164 S.W.3d 386, 388 (Tex.
2005).  The evidence presented would
allow a reasonable and fair-minded jury to find that Appellants failed to
uniformly enforce their absence control policy where the testimony was clear
that Appellants had no discretion but to automatically terminate Aguilar as of
October 17, 2005, but failed to do so for nearly three weeks, with no
justification or explanation.  Certainly
the jury’s finding is not against the great weight of the evidence presented so
as to be clearly wrong or unjust.  Ortiz, 917 S.W.2d at 772.  Appellants’ first issue is overruled.

II.               
 Retaliation

Appellants next
argue that the evidence is insufficient to support Aguilar’s retaliation claim
and that there is insufficient evidence to support the required causal
connection between Aguilar’s workers’ compensation claim and his discharge.

To prove a
violation of Section 451.001, it is not necessary to show that a workers’
compensation claim was the sole motivation for the termination.  Cont’l
Coffee Prods. Co., 937 S.W.2d at 450. 
A plaintiff must show a causal connection between his discharge and his
compensation claim.  Id.  This causal connection
may be established by either direct or circumstantial evidence.[8]  Hernandez
v. Am. Tel. & Tel. Co., 198 S.W.3d 288, 291 (Tex.App.--El Paso
2006, no pet.); Paragon Hotel Corp. v.
Ramirez, 783 S.W.2d 654, 658 (Tex.App.--El Paso 1989, writ denied).  Circumstantial evidence sufficient to
establish a causal link between termination and filing a compensation claim
includes:  (1) knowledge of the
compensation claim by those making the decision to terminate; (2) expression of
a negative attitude toward the employee’s injured condition; (3) failure to
adhere to established company policies; (4) discriminatory treatment in
comparison to similarly situated employees; and (5) evidence that the stated
reason for the discharge was false.  Cont’l Coffee Prods. Co. v. Cazarez, 903
S.W.2d 70, 77-8 (Tex.App.--Houston [14th Dist.] 1995), aff’d in part and rev’d in part on other grounds, 937 S.W.2d 444
(Tex. 1996).  See also Wyler Industrial Works, Inc. v. Garcia, 999 S.W.2d 494,
501 (Tex.App.--El Paso 1999, no pet.)(noting circumstantial factors relating to
discrimination such as:  knowledge of the
compensation claim by those making the decision to terminate; a negative
attitude toward the employee’s injured condition; failure to adhere to
established company policies; discriminatory treatment of the injured employee
in comparison to similarly situated employees; and providing incentives to
refrain from reporting on-the-job injuries.).  An additional factor is temporal proximity of
the termination to the date of the injury or claim.  Porterfield
v. Galen Hosp. Corp., Inc., 948 S.W.2d 916, 919 (Tex.App.--San Antonio 1997,
writ denied), citing Munoz v. H & M Wholesale, Inc., 926
F.Supp. 596, 610 (S.D.Tex. 1996)(finding retaliatory motive where employee
fired within one month of filing workers’ compensation claim); Worsham Steel Co. v. Arias, 831 S.W.2d
81, 84 (Tex.App.--El Paso 1992, no writ)(finding retaliatory motive where
employee fired a few days following injury in order to deny employee ability to
file claim).  Other circumstantial
evidence can include an employer providing incentives to refrain from reporting
on-the-job injuries.  See Tope, 935 S.W.2d at 913.

In the summary
judgment context, once the causal link is established, it is the employer’s
burden to rebut the alleged discrimination by demonstrating there was a
legitimate reason for the discharge.  Terry v. Southern Floral Co., 927 S.W.2d
254, 257 (Tex.App.--Houston [1st Dist.] 1996, no pet.).  If the employer can make such a showing, the
burden shifts back to the employee to produce controverting evidence of a
retaliatory motive.  Terry, 927 S.W.2d at 257, citing
Carrozza, 876 S.W.2d at 314 (Tex. 1994); Lozoya v. Air Systems Components, Inc., 81 S.W.3d 344, 347-48
(Tex.App.--El Paso 2002, no pet.)(citing Terry
and Carrozza in holding that employee
failed to rebut that he was terminated in response to a reasonable absence
control-policy).

However, once an
employment discrimination case has been fully tried on its merits, appellate
courts do not engage in a burden-shifting analysis but instead focus on whether
the evidence is legally and factually sufficient to support the jury’s ultimate
finding. See Rutherford v. Harris County, Texas, 197 F.3d 173, 180-81 (5th Cir. 1999);
Smith v. Berry Co., 165 F.3d 390, 394
(5th Cir. 1999); Patterson v. P.H.P.
Healthcare Corp., 90 F.3d 927, 933 (5th Cir. 1996).

Aguilar must show
that but for the filing of his workers’ compensation claim, his termination
would not have occurred when it did.  See Cont’l
Coffee Prods. Co., 937 S.W.2d at 450.  While there may be some evidence that
Appellants had other reasons for terminating Aguilar, the jury is the sole evaluator
of the witnesses’ credibility and it is entitled to resolve conflicts in the
testimony as it sees fit.  See Emeritus Corp. v. Blanco, 355 S.W.3d
270, 281 (Tex.App.--El Paso 2011, pet. denied).

In the instant
case, several of the Continental Coffee
Prods. Co. and Wyler factors are
present and establish the initial causal link. 
For example, there is no question that Appellants had knowledge of the
compensation claim and that the people making the decision to terminate were
aware of the claim, a factor favoring Aguilar.  Aguilar testified that other employees showed
a negative attitude towards his condition, while Appellants provided
contravening testimony. Appellants deviated from their policies in a number of
respects, specifically in that Appellants’ policy is to provide transitional or
light duty for injured employees, however after only a few days on light duty,
Aguilar was told to either return to his regular duties or be fired.  Appellantsfurther deviated from their
policies by failing to notify Aguilar in writing, advising him of the
expiration of his leave prior to terminating his employment.[9]

            Aguilar
argues that there is evidence that Appellants acted in a discriminatory manner
in comparison to other similarly situated employees, however this argument is
predicated on the assertion that Appellants contested the workers’ compensation
claim.  As this Court has noted, the
exercise of an employer’s statutory right to challenge an employee’s claim of
benefit is not evidence of a negative attitude. 
Lozoya, 81 S.W.3d at 348-49.  We find that reasoning applicable to this
factor as well, resulting in this factor being, at best, neutral to Aguilar.  There is little question that the temporal
proximity factor favors Aguilar, as he was injured on September 14, 2005 and
was terminated on November 3, 2005.[10]

Taken as a whole, the
Continental Coffee Prods. Co. factors
tend to show the existence of a causal connection between the filing of
Aguilar’s workers’ compensation claim and his discharge.  We conclude that Aguilar presented legally
and factually sufficient evidence to support the jury’s finding that but for
the filing of Aguilar’s workers’ compensation claim his termination would not
have occurred.  Appellants’ second issue
is overruled.

III.       Charge
Error

Appellants next argue
that the trial court erred by giving a constructive discharge instruction in a
termination case.

We review the
trial court’s submission of jury instructions and questions under an abuse of
discretion standard.  Gutierrez v. People’s Management of Texas I,
Ltd., 277 S.W.3d 72, 77 (Tex.App.--El Paso 2009, pet. denied).  “A trial court abuses its discretion if it
acts in an arbitrary or unreasonable manner without reference to any guiding
rules or principles.”  Walker v. Gutierrez, 111 S.W.3d 56, 62
(Tex. 2003).  In reviewing jury charges
we consider the parties’ pleadings, the evidence presented at trial, and the
charge in its entirety.  Gutierrez, 277 S.W.3d at 77.  Even if there was an abuse of discretion by
the trial court, we will reverse only where the error in the jury charge is
shown to be harmful.  Id. 
“‘We may not reverse unless the error, when viewed in light of the
totality of the circumstances, amounted to such a denial of the rights of the
complaining party as was reasonably calculated [to] and probably did cause
rendition of an improper judgment.’”  Id., citing
Braudrick v. Wal-Mart Stores, Inc.,
250 S.W.3d 471, 475 (Tex.App.--El Paso 2008, no pet.).

In his petition, Aguilar
alleged that Appellants constructively terminated him. The jury charge included
the following instruction:

An employee is
considered to have been discharged when an employer makes conditions so
intolerable that a reasonable person in the employee’s position would have felt
compelled to resign.

 

            Appellants
objected to the proposed charge on the record, arguing that Aguilar voluntarily
resigned and that no evidence was presented indicating working conditions which
forced him to resign.  Appellants’
argument is similar to the one made in Passons
v. University of Texas at Austin, 969 S.W.2d 560, 562 (Tex.App.--Austin
1998, no pet.), where constructive discharge occurred because conditions were
so intolerable that an employee was “compelled to resign.”  However, the language in the jury charge is
identical to other court-approved language for constructive discharge
instructions.  See Green v. Industrial Specialty Contractors, 1 S.W.3d 126, 134
(Tex.App.--Houston [1st Dist.] 1999, no pet.).  In Dillard
Dept. Stores, Inc. v. Hecht, 225 S.W.3d 109 (Tex.App--El Paso 2005, pet.
granted, judgm’t vacated w.r.m.), this Court noted that “[t]he focus is on the
reaction of a reasonable employee to the conditions created by the employer,”
and that the conditions control, not the employer’s state of mind.  Hecht,
225 S.W.3d at 119.

            The
record reflects that Aguilar was regarded as a good and competent employee
prior to his injury, to the point that he was considered a “very good installer” and was “the best or
one of the best.”  Following his injury, Aguilar
was to be placed on light duty.  However,
within days of his injury, he was mocked and informed that his injury was
costing the department and Appellants money and interfering with the
department’s quota system.  Appellant was
told that his workers’ compensation claim would be denied and that if he could not
do installs, he would be fired.  Appellants
advised Aguilar that his only option, apart from returning to performing
installs, was to go on leave without pay pursuant to FMLA.  Aguilar testified that he did not fully
understand FMLA leave.  Aguilar was the
sole source of income for his family, including his three children, and as his
workers’ compensation benefits were not being paid, he felt compelled to seek
other employment.

            Based on the record, we
find that a jury could reasonably conclude that Aguilar was constructively
terminated based on the conditions created where Aguilar was given no
alternative to returning to full duty as an installer, in spite of his light
duty restrictions, other than to accept unpaid FMLA leave.  We find no error under the Gutierrez analysis stated above.  Appellants’ third issue is overruled.

IV.            
Improper and Prejudicial Character
Evidence

Appellants’ fourth argument is that the trial
court erred in admitting the testimony of Lawrence Chavez, a former employee
who was not employed by Appellants at the time Aguilar was injured.  Chavez had no personal knowledge of Aguilar’s
injury, his workers’ compensation claim, or his termination.  Prior to the start of the trial, Aguilar had
indicated his intent to introduce testimony of four former employees of Appellants
in order to show hostility towards employees who filed workers’ compensation
claims.  Appellants objected to such
testimony.  Eventually, the trial court
excluded testimony of two of the witnesses, and Chavez was the only witness
whose testimony was presented.[11]

Evidentiary matters are within the sound
discretion of the trial court.  Cunningham v. Hughes & Luce, L.L.P.,
312 S.W.3d 62, 70-71 (Tex.App.--El Paso 2010, no pet.).  A trial court abuses its discretion when it
acts without regard for any guiding rules or principles.  Id.  Stated differently, the appropriate inquiry
is whether the ruling was arbitrary or unreasonable.  Id.,
citing Smithson v. Cessna Aircraft
Company, 665 S.W.2d 439, 443 (Tex. 1984); Landry v. Travelers Insurance Co., 458 S.W.2d 649, 651 (Tex. 1970).  We will not reverse a trial court for an
erroneous evidentiary ruling unless the error probably caused the rendition of
an improper judgment or probably prevented appellant from properly presenting
its case to the court of appeals. See
Tex.R.App.P. 44.1(a).  Even if a trial court erred by improperly
admitting evidence, reversal is warranted only if the error probably caused the
rendition of an improper judgment.  Tex.R.App.P. 61.1(a); Bay Area Healthcare Group, Ltd. v. McShane,
239 S.W.3d 231, 234 (Tex. 2007); Nissan
Motor Co. Ltd. v. Armstrong, 145 S.W.3d 131, 144 (Tex. 2004); Owens–Corning Fiberglas Corp. v. Malone,
972 S.W.2d 35, 43 (Tex. 1998); Quick v.
Plastic Solutions of Texas, Inc., 270 S.W.3d 173, 184-85 (Tex.App.--El Paso
2008, no pet.)(holding that the complaining party is not required to prove that
“but for” the error, a different judgment would necessarily have resulted, but
must show that the error “probably” resulted in an improper judgment).  Reversible error usually requires showing that
the judgment turns on the particular evidence excluded or admitted.  Quick,
270 S.W.3d at 184-85.

Appellants argue that the admission of
Chavez’s testimony constituted improper character evidence which was unduly
prejudicial and should have been excluded. 
Aguilar contends that the testimony was relevant and admissible to show
hostile and discriminatory attitudes towards workers’ compensation claimants by
Appellants.[12]

Clearly, Chavez’ testimony was relevant to
the uniform application of Appellants’ absence control policy and to the Section
451.001 claim.  Chavez testified that he
was injured while working as an installer and reported the injury to Rivers and
that following his injury, Rivers and Fragoso began treating him as though he
was “out the door.”  Chavez testified
that even though he was placed on light duty restrictions, Rivers felt that
there was nothing Chavez could do in the department and that no accommodations
were made for him following his injury, even though he made suggestions as to
work he could do.  Chavez testified that,
according to Appellants, there was a “miscommunication” and he was told to not
come in to work.  Someone else allegedly told
him to come into work and when Chavez failed to do so, he was terminated,
though he testified that he did not remember signing anything stating the
reasons for his termination.  Chavez’s
testimony included that he never saw anyone with a workers’ compensation injury
working once they were injured, noting “[o]nce they got hurt, they were either
in the shop or gone.”

We do not find that the admission of Chavez’
testimony probably rendered an improper judgment given that there was a
substantial preponderance of both legally and factually sufficient evidence
presented at trial to support Aguilar’s claim of retaliation under Section 451.001.  The trial court did not err by admitting
Chavez’s testimony.  Appellants’ fourth
issue is overruled.

V.               
Exemplary
damages

Appellants’ final
issue asserts that the evidence at trial is legally and factually insufficient to
support the award of exemplary damages. 
In order to recover punitive damages in a case alleging a violation of Section
451.001, a plaintiff must prove that the employer “acted willfully and with malice.”  Cont’l
Coffee Prods. Co., 937 S.W.2d at 452. 
As noted by the court in Continental
Coffee Prods. Co., just because an act may be unlawful or wrongful does not
necessarily mean that the act was malicious. 
Id. at 454.  “Actual malice” is characterized by evidence
of ill-will, spite, or a specific intent to cause injury to the employee.  Id.  The Continental
Coffee Prods. Co. court explained that the act must be of a “wanton and
malicious nature, or . . . of a criminal or wanton nature.”  Id.
at 454.  See also Tex.Civ.Prac.&Rem.Code
Ann. § 41.001(7)(West 2008)(“‘Malice’ means a specific intent by the
defendant to cause substantial injury or harm to the claimant.”).  Such evidence must be clear and
convincing.  Hecht, 225 S.W.3d at 117.  Clear
and convincing evidence is that measure or degree of proof that will produce in
the mind of the trier of fact a firm belief or conviction as to the truth of
the allegations sought to be established. 
Id.

The Texas Supreme
Court recently discussed the scope of “actual malice” in Safeshred, Inc. v. Martinez, 365 S.W.3d 655 (Tex. 2012).  The underlying case in Safeshred concerned a Sabine
Pilot[13]
wrongful termination case where the plaintiff sought exemplary damages.  The Supreme Court’s discussion of workers’
compensation retaliation claims for comparison and use in a Sabine Pilot analysis has bearing here.  Safeshred,
365 S.W.3d at 660-61.  The Supreme Court
noted that “willfulness alone cannot also justify a punitive damages award,”
and that “more is required.”  Id. at 662, citing Cazarez, 937 S.W.2d at 454 (requiring “actual malice”).  The Safeshred
Court noted that the “‘substantial injury’ referred to . . . must be something
‘independent and qualitatively different from the . . . compensable harms
associated with [the cause of action].’”  Id.
at 662 (citation omitted).  Examples of
this type of malice might be “‘where the employer circulates false or malicious
rumors about the employee before or after the discharge . . . or actively
interferes with the employee's ability to find other employment.’”  Id.
(citations omitted).  The Supreme Court
noted that “[d]amage to the employee’s reputation or future employment
prospects” was a “qualitatively different injury” than the actual termination,
and that “conscious indifference to a risk of that injury” might warrant
exemplary damages.  Id. at 663.  The Court also
noted other cases where malice was found when the employer engaged in
harassment in connection with a wrongful firing. [14]
 The Court stated that malice may exist
where “an employer knows the retaliatory firing is unlawful and does it
anyway.”  Id. at 663 (citation omitted). 
The Court held that malice could be shown by evidence that the employer,
in firing the employee, “consciously ignored a risk of some additional serious
harm, such as interference with his future employment, harassment, or
terminating his employment knowing the reason for doing so is unlawful.”  Id.

Aguilar’s evidence
does not rise to the level of clear and convincing so as to establish that
Appellants acted with the requisite ill-will or specific intent to injure
Aguilar or consciously ignored a risk of some additional serious harm.  Aguilar’s best evidence of malice comes from
the testimony of Chavez, who testified about how Appellants treated him
following his injury.  However he
provided no testimony regarding how Appellants treated Aguilar.  See
Safeshred, 365 S.W.3d at 660-63.  The record reflects that Appellants’ accepted the
legitimacy of Aguilar’s injury, sent him to receive treatment and initially
placed him on light duty.  While the
record shows that both Rivers and Fragoso acknowledged that they knew it was
against the law to discriminate against an employee because he filed a workers’
compensation claim, the evidence does not show that Appellants harbored malice
or ill-will toward Aguilar personally, or that they undertook actions designed
to affect his future employment prospects or his reputation.[15]
 There is no evidence in the record that
Appellants had a malicious intent to harm Aguilar when they terminated him, let
alone evidence sufficient to meet the requisite heightened standard under Continental Coffee Prods. Co. and Safeshred.  While Appellants’ actions “may not have been
handled in the best possible and most ideal manner,” (Hecht, 225 S.W.3d at 118),
they are not “wanton” nor do they ignore the risk of some other serious harm.  See also
Stevens v. Nat’l Educ. Ctrs., Inc., 990 S.W.2d 374, 377 (Tex.App.--Houston
[14th Dist.] 1999, pet. denied)(finding insufficient evidence of malice where
plaintiff was terminated for unlawful reasons, her supervisors were angry with
her about her workers’ compensation injury and doubted its validity, flung papers
at her, and disliked her).  Appellants’ final
issue is sustained.

CONCLUSION

            Having
overruled Appellants’ first four issues and sustained Appellants’ fifth issue,
the judgment of the trial court is affirmed in part and reversed in part.  That portion of the judgment awarding
exemplary damages is reversed, and we render judgment that Appellee take
nothing on his claim for exemplary damages.

 

 

October 17, 2012

                                                                        CHRISTOPHER
ANTCLIFF, Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.











[1]
This occurred at an entry of judgment hearing held on August 4, 2010, where
counsel for both Aguilar and Appellants agreed that the change was required for
the judgment to accord with applicable statutes.





[2]
Field Service Specialist Level II.





[3]
Aguilar did testify that such meetings had occurred in the past, where topics
including how to carry your ladder, hydration, working in attics, proper van
driving and other areas of safety, were discussed.

 





[4]
Referred to as “little giant ladders” in the testimony.





 

[5]
Fragoso testified that all installers received training with the ladder, which
could weigh 50 pounds, including how to carry the ladder, how to fold the
ladder, and how to extend the ladder.





[6]
See 29 U.S.C.A. §§ 2601-2654 (West
2009 & Supp.2011)(allowing up to twelve weeks of unpaid leave for health
problems).





[7]
In March of 2006, Aguilar’s claim was granted in full and he was awarded
workers’ compensation benefits.





[8]
If there is no direct evidence of discriminatory discharge, then the employee
must rely on circumstantial evidence.  America West Airlines, Inc. v. Tope, 935
S.W.2d 908, 913 (Tex.App.--El Paso 1996, writ dism’d as moot).





[9]
The record also reflects that Aguilar failed to adhere to company policies when
he failed to request additional medical leave and failed to notify the company
prior to the end of his FMLA leave to coordinate his job restoration.





[10]
Although the evidence established that Aguilar should have been terminated,
under a neutral application of Appellants’ absence control policy, on or about
October 17, 2005.  





[11]
There is no indication in the record that the trial court ever ruled on the
admissibility of the fourth former employee’s testimony or that any party ever
offered such testimony.





[12]
Aguilar argues that Appellants waived this issue by failing to object when
Chavez’s videotaped deposition testimony was played on June 24, 2010.  However, at the beginning of the trial,
Appellants filed a motion to exclude testimony, including that of Chavez, on
the basis:  (1) of its prejudicial effect
under Rule 403; (2) that it constituted impermissible character evidence under
Rule 404; and (3) of a lack of personal knowledge under Rule 601.  Appellants made specific, line-by-line
objections to the portions of Chavez’s videotaped deposition testimony about
which they now complain.  Appellants
properly preserved their objections to Chavez’s testimony.





[13]
Sabine Pilot Service, Inc. v. Hauck,
687 S.W.2d 733 (Tex. 1985).





[14]
See Whole Foods Mkt. Sw., L.P. v.
Tijerina, 979 S.W.2d 768, 779 (Tex.App.--Houston [14th Dist.] 1998, pet.
denied)(forcing an employee to sign a false confession, employer commenced
pattern of badgering employee immediately after injury, refused to listen to
employee’s excuse after a false confession); Lubbock Cnty. v. Strube, 953 S.W.2d 847, 859-60 (Tex.App.--Austin
1997, pet. denied)(singling an employee out for unfavorable work assignments
and conducting an unfair disciplinary hearing prior to the firing).





[15]
Indeed, the record establishes that while on FMLA leave, Aguilar was able to obtain
full-time employment elsewhere.