COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| | § | |
| DEBORAH CUNNINGHAM, | | No. 08-07-00292-CV |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 68th District Court |
| | § | |
| HUGHES & LUCE, L.L.P. and | | of Dallas County, Texas |
| CHRISTOPHER L. DAVIS, | § | |
| | | (TC # 04-04645-C) |
| Appellees. | § | |

**O P I N I O N**

This is an appeal from a "trial within a trial." Deborah Cunningham filed a legal malpractice

suit against Hughes & Luce L.L.P. and Christopher Davis, complaining of mistakes they made in

handling consumer litigation against a car repair facility. The jury found for the attorneys on all of

Cunningham's claims. Finding no error, we affirm.

**FACTUAL SUMMARY**

*The Classic Litigation*

Cunningham took her 2000 Mazda Protege to Classic BMW for repairs after an automobile

accident. A dispute arose concerning the length of time it took to repair the automobile and the

quality of those repairs. Cunningham refused to pay for the repairs and left the shop with her car.

Classic filed charges for theft of services. A warrant was issued for her arrest and she was advised

to turn herself in. Cunningham retained Davis to represent her and signed a fee contract on February

21, 2001. Davis agreed to a reduced hourly rate of $155.00 plus: (1) 15% of any gross recovery

from $1.00 to $5,000.00; and (2) 12.5% of any gross recovery exceeding $5,001.00. On February

23, Cunningham turned herself into the police and was released a few hours later. Three days later, Cunningham and Davis signed a new contract by which Davis would receive 33 1/3 % of any gross recovery before suit was filed, 40% of any gross recovery after suit was filed, and 50% of any gross recovery after appellate briefing. This second contract increased the attorney's percentage recovery, but eliminated Cunningham's obligation to pay him an hourly fee. Davis then hired Robert Rubarts, a partner in Hughes & Luce, L.L.P. , to assist him with Cunningham's claims.

The attorneys filed suit against Classic for malicious prosecution, intentional infliction of emotional distress, defamation, unfair debt collection practices, breach of warranty, and violations of the Texas Deceptive Trade Practices/Consumer Protection Act (DTPA). In response to Classic's disclosure requests, the attorneys designated Darrell Jordan as an expert witness on attorneys' fees. The response provided Jordan's name, address, telephone number, and *curriculum vitae*. It also indicated that Jordan would testify to the reasonable and necessary attorneys' fees incurred by Cunningham in the course of her lawsuit.

On February 13, 2002, Classic offered to settle for $45,000, of which $25,000 was attributable to actual damages and $20,000 was attributable to attorneys' fees, costs, and expenses. This offer was rejected. Classic then designated Marc Richman as its expert witness on attorneys' fees.

Prior to trial, each party moved to exclude the testimony of the other's expert. Davis and Rubarts submitted an affidavit in which Jordan opined that a reasonable and necessary fee would range from $300,000 to $500,000. The affidavit also detailed documents he reviewed in formulating his opinion, including Hughes & Luce's billing records. These billing records had not been provided during discovery. The trial court, Judge Evans, ultimately excluded Jordan as an expert because the attorneys' discovery responses failed to disclose Jordan's opinions, the sources he relied upon, and

the amount of fees sought. Unable to present expert testimony, Cunningham was not allowed to submit a jury question on attorney's fees.

The jury found that Classic maliciously prosecuted Cunningham as a result of malice or fraud, that Classic defamed Cunningham with actual malice, and that Classic intentionally and knowingly engaged in false, misleading, or deceptive acts or practices. The jury awarded Cunningham actual damages of $588,744. The bifurcated trial then moved to Cunningham's claim for exemplary damages and additional damages under the DTPA. At this phase, Rubarts was permitted to ask the jury to consider attorneys' fees in its deliberations. The jury awarded Cunningham $1,000,000 in additional damages.

*The Fee Dispute*

Following trial, Appellees recommended that Cunningham settle her claims.[1] Cunningham initially refused but eventually agreed to settle for $1,200,000. The paperwork was completed and Classic tendered payment to Appellees.[2] From the $1,200,000, Appellees deducted expenses in the amount of $37,424.60 and attorney's fees of $480,000, representing 40% of the total recovery. A check for $682,575.40 was hand-delivered to Cunningham on May 1, 2003.

Several months later, Cunningham began questioning Davis as to why she had not recovered her attorneys' fees from Classic. On March 30, 2004, Cunningham sent a formal demand letter. Appellees filed suit on May 21, 2004, seeking a declaratory judgment that the fee contract was valid and enforceable. Cunningham filed counterclaims for professional negligence, breach of contract,

---

[1] The record reflects Appellees' concerns that the judgment would not stand up on appeal, that the $1.5 million in DTPA damages was "very suspect" and there was no "evidence in the record that Mrs. Cunningham had suffered that kind of injury because her car wasn't repaired well."

[2] Classic originally identified Cunningham as one of the payees. At Rubart's request, the check was redrafted excluding Cunningham as a payee. The second check was then deposited in Hughes & Luce's trust account.

breach of fiduciary duty, fraud, conversion, and violations of the DPTA. Appellees countered with fraud claims of their own.

*The Malpractice Litigation*

During the malpractice lawsuit, the trial court, Judge Stokes (presiding), granted a partial summary judgment, holding that Judge Evans did not abuse his discretion by excluding Jordan's testimony. Immediately prior to voir dire, Appellees non-suited all of their claims against Cunningham, with the exception of their declaratory judgment and quantum meruit claims. The trial court then realigned the parties, with Cunningham becoming the plaintiff at trial. The jury rejected all of Cunningham's claims and found in favor of Appellees on every issue:

- Appellees were not negligent and/or their negligence was not the proximate cause of the occurrence in question (Question No. 1);

- Appellees did not engage in an unconscionable action or course of action (Question No. 4);

- Appellees did not breach their fiduciary duties to Cunningham (Question No. 7);

- Appellees did not convert funds belonging to Cunningham (Question No. 9);

- Appellees did not commit fraud against Cunningham (Question No. 12);

- The engagement agreement between Appellees and Cunningham was fair and reasonable at the time of its inception (Question No. 16); and

- Appellees performed compensable work for Cunningham with a reasonable value of $289,298.23 and $228,126.37, respectively (Question Nos. 17 and 18).

The trial court rendered a take-nothing judgment and this appeal follows.

**SUFFICIENCY OF THE EVIDENCE**

In her first two issues, Cunningham challenges the legal and factual sufficiency of the evidence to support the jury's finding that Appellees were not negligent as a result of their failure to properly designate an expert witness on attorneys' fees. Cunningham concedes that the legal

sufficiency issue has not been preserved for review. We overrule Point of Error One and turn now to a factual sufficiency review.

*Standard of Review*

Where the party with the burden of proof is challenging the factual sufficiency of the findings, the appropriate complaint is that the adverse findings are "against the great weight and preponderance of the evidence." *Tate v. Tate*, 55 S.W.3d 1, 5 (Tex.App.--El Paso 2000, no pet.). In reviewing a factual sufficiency issue, we must consider and weigh all of the evidence in order to determine if the adverse finding was so against the great weight and preponderance of the evidence that it was clearly wrong and manifestly unjust. *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Marrs and Smith Partnership v. D.K. Boyd Oil and Gas Co., Inc.*, 223 S.W.3d 1, 13 (Tex.App.--El Paso 2005, pet.denied), *citing Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We will not interfere with the fact finder's resolution of conflicts or determine the weight or credibility of the witnesses testimony because a fact finder's determination of conflicting evidence is generally regarded as conclusive. *Tate*, 55 S.W.3d at 5.

*Legal Malpractice*

A legal malpractice action in Texas is based on negligence. *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989). The elements of a legal malpractice claim are: (1) the existence of a duty, (2) a breach of that duty, (3) the breach proximately caused the injury, and (4) damages resulting from the injury. *Id*. at 665; *see also Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. National Development and Research Corp.*, — S.W.3d —, 53 Tex.S.Ct.J. 77, 2009 WL 3494978 (Tex. Oct. 30, 2009). When a legal malpractice claim arises from prior litigation, the plaintiff has the burden to prove that "but for" the attorneys' negligence, she would be entitled to judgment. *MND Drilling Corp. v. Lloyd*, 866 S.W.2d 29, 31 (Tex.App.--Houston [14th Dist.] 1987, no writ). A lawyer is held to the standard of care that would be exercised by a reasonably prudent attorney. *Hall v. Rutherford*, 911 S.W.2d 422, 424 (Tex.App.--San Antonio 1995, writ denied). The conduct of the attorney must be evaluated based upon the information the attorney had at the time of the purported negligence. *Cosgrove*, 774 S.W.2d at 664. If an attorney makes a decision which a reasonably prudent attorney could make in the same or similar circumstance, it is not an act of negligence, even if the result is undesirable. *Id.* at 665. The standard is an objective exercise of professional judgment. *Id.*

A party may request the following for any testifying expert:

(1)     the expert's name, address, and telephone number;

(2)     the subject matter on which the expert will testify;

(3)     the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of the responding party, documents reflecting such information;

(4)     if the expert is retained by, employed by, or otherwise subject to the control of the responding party:

      (A)     all documents, tangible things, reports, models, or data compilations that have

been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and

(B) the expert's current resume and bibliography.

*Relevant Facts*

Daniel Sheehan, an expert on legal malpractice, testified that Appellees were not negligent in designating Jordan as an expert on attorneys' fees, that Appellees did not breach their duties "either in the context of negligence or fiduciary duties," and that a reasonable and prudent attorney could have believed he had not erred. Sheehan further testified that the disclosure was sufficient and that a reasonable and prudent attorney exercising ordinary care would have expected Jordan's testimony to be admitted

Rubarts testified that he was not negligent, that he was "in compliance with the rule" on expert disclosures, that he did not breach his fiduciary duty to Cunningham, and that he properly designated Jordan "the way [he] was taught" and "the way [he]'d always done it." Rubarts testified that he did not provide any documents to Jordan because he was planning to elicit expert testimony at trial through hypothetical questions.

Jeff Smith testified as Cunningham's expert. He opined that (1) Appellees' designation of Jordan did not comply with Rule 194, (2) Appellees were negligent; (3) the jury in the Classic litigation would have awarded Cunningham attorneys' fees, and (4) Appellees breached their fiduciary duty by failing to disclose their mistake to Cunningham. Appellees characterize Smith as having been discredited because of his admissions that:

- his law license was suspended for six years because he stole $20,000 from a client;

- he was found guilty of violating multiple Disciplinary Rules of Professional Conduct;

- he was held in contempt of court after his license was reinstated;

• he had been sanctioned two or three times;

• he had failed to pay a court-ordered sanction and tried to discharge it in bankruptcy; and

• he was sanctioned $183,360.93 by a federal judge for suing a law firm "without legal and factual support, in bad faith, vexatiously, wantonly, maliciously, frivolously and for improper purposes."[3]

*Analysis*

Cunningham had the burden to prove that "but for" Appellees' negligence, she would have recovered her attorneys' fees. She presented expert testimony that Appellees did not comply with Rule 194, and were negligent in their designation. Appellees elicited controverting evidence.

On appeal, Cunningham contends that Judge Stokes ruled as a matter of law that Judge Evans did not abuse his discretion in excluding Jordan's testimony. She then argues that "the question for the jury was whether Appellees' negligence proximately caused Cunningham damage." From this, she concludes that the jury was not entitled to ignore or overrule either judge. The problem with this argument is, first and foremost, that the jury was not asked that question. Instead, Question No. 1 inquired:

> Did the negligence, **if any**, of those named below proximately cause the occurrence in question?
>
> Negligence, when used with respect to the conduct of Hughes & Luce, L.L.P. and Christopher Davis, means the failure to use ordinary care, that is, failing to do that which an attorney of ordinary prudence would have done under the same or similar circumstances or doing that which an attorney of ordinary prudence would not have don under the same or similar circumstances.

Cunningham does not complain on appeal of charge error.[4] Indeed, the question was submitted by

---

[3] The Fifth Circuit affirmed the sanctions award.

[4] Clearly, the question comes straight from the pattern jury charge and is appropriate where negligent conduct is in issue. Cunningham did not ask for an instruction that Appellees were negligent as a matter of law, nor did she submit an issue limited to causation.

her attorney and he argued it at length during summation. The jury was specifically asked whether the attorneys were negligent and if their negligence caused the injury. And the jury answered no.

Her argument fails for a second reason. Cunningham failed to object to defense testimony that undercut Judge Stokes' ruling, Her attorney asked Sheehan this question:

> Question [by Mr. Pennington]: Well, would you agree that Mr. Rubarts and the attorneys representing Mrs. Cunningham were negligent with respect to the designation of attorney's fees?
>
> Answer [by Mr. Sheehan]: No.

During questioning by the defense, Sheehan addressed the subject again:

> Question [by Mr. Prince]: So you are aware that Ms. Cunningham has claimed, no big surprise, that Hughes & Luce and Mr. Davis committed legal malpractice and breached their fiduciary duties to her?
>
> Answer [by Mr. Sheehan]: Yes, I'm aware of that.
>
> Q: Based on your review of the file, what are your opinions of those claims?
>
> A: I don't think they breached their duties either in the context of negligence or fiduciaries.

No objection was lodged. Cunningham's attorney then took it a step further:

> Question [by Mr. Pennington]: Now you understand that Judge Evans who was the judge in the underlying lawsuit, Judge Evans is the one who listened to what was presented on the record and Judge Evans is the one who determined that Hughes & Luce and Mr. Davis did not comply with Rule 194 and he refused to allow Mr. Jordan to testify?
>
> Answer [by Mr. Sheehan]: Yes, I know that.
>
> Q: All right. And are you aware that another judge has reviewed Judge Evans' ruling and determined that the ruling was not an abuse of discretion?
>
> A: Yes.
>
> Q: And so that makes two judges now who have ruled the same way?
>
> A: Well, I wouldn't agree with that. Judge Evans ruled on whether there had been

sufficient compliance with Rule 194; that was the issue he was facing. The issue that Judge Stokes later faced was, was his decision an abuse of discretion. Judge Stokes reviewing [the] Rule 194 issue may have decided the opposite of Judge Evans. That wasn't the question before him.

Based on these questions, the trial court determined that Cunningham's counsel had violated the order *in limine*[5] and that defense counsel would be able to question Sheehan as to whether Judge Evans' decision was erroneous. Sheehan's answer was straight forward: "I think Judge Evans improperly refused to permit Darrell Jordan to testify."

Appellees additionally argue that Cunningham wholly failed to establish that Classic or its liability carrier would have settled for more than $1.2 million if the jury had awarded fees. Sheehan testified that "the larger the verdict, the less your chance of settling" because "when a defendant really gets popped they're just not going to settle at all or they want to go to the appellate court." In short, Appellees contend that the jury was entitled to believe that Classic would have appealed rather than settled had the verdict been $2 million ($1.5 million plus $500,000 in attorneys' fees) for what was in essence bad car repairs.

Whether Appellees failed to use ordinary care was an issue of fact for the jury. The adverse finding was not so against the great weight and preponderance of the evidence that it was clearly wrong or manifestly unjust. *See Dow Chemical Co.*, 46 S.W.3d at 242. The jury chose to believe Appellees' witnesses and reject Cunningham's claims. We will not interfere with the fact finder's resolution of conflicts or determine the weight or credibility of the witnesses testimony. *See Tate*, 55 S.W.3d at 5. Because the evidence was factually sufficient, we overrule Point of Error Two.

## EVIDENTIARY ERROR

---

[5] We have not been able to locate within the voluminous clerk's record the precise order *in limine*. It is clear from the reporter's record, however, that the parties and their counsel were not to inquire as to the propriety of Judge Evans' ruling without first approaching the bench.

In Point of Error Three, Cunningham contends that the trial court erred by admitting evidence of prior litigation she initiated and evidence of prior criminal charges. Evidentiary matters are committed to the trial court's sound discretion. *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex. 1989). A trial court abuses its discretion when it acts without regard for any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex. 1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). Stated differently, the appropriate inquiry is whether the ruling was arbitrary or unreasonable. *Smithson v. Cessna Aircraft Company,* 665 S.W.2d 439, 443 (Tex. 1984); *Landry v. Travelers Insurance Co.,* 458 S.W.2d 649, 651 (Tex. 1970). The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Southwestern Bell Telephone Co. v. Johnson,* 389 S.W.2d 645, 648 (Tex. 1965); *Jones v. Strayhorn,* 159 Tex. 421, 321 S.W.2d 290, 295 (1959).

### Evidence of Prior Litigation

On cross-examination, Appellees asked Cunningham, "Do you think that you, you personally, have ever done anything to contribute to the lawsuit problem we have in America?" Cunningham objected that the question was irrelevant and a violation of Rule of Evidence 404. On appeal, however, she complains that the trial court erred in requiring her to answer a "disparaging and derogatory question." *See Falk & Mayfield L.L.P. v. Molzan*, 974 S.W.2d 821, 824 (Tex.App.--Houston [14th Dist.] 1998, pet. denied). Because her objection at trial does not comport with her challenge on appeal, this issue has not been preserved for review. TEX.R.APP.P. 33.1.

Next, Cunningham argues that the trial court erred by admitting evidence of prior litigation, including two sexual harassment lawsuits and sanctions entered against her by a federal court. In response, Appellees contend that her citations to the record relate only to questions about a particular

lawsuit in which she had sued a former employer, TCI Cable. We agree and limit our review to the TCI Cable litigation and the sanctions issued in that case.

The legal malpractice lawsuit included a claim that Appellees violated the DTPA by charging her an unconscionable fee, entering into an unfair contingency fee agreement, and urging her to settle her claims against Classic without disclosing the problem with the expert designation. To prevail, Cunningham had to show that Appellees took "advantage of [her] lack of knowledge, ability, experience, or capacity . . . to a grossly unfair degree." TEX.BUS.&COM.CODE § 17.45(5). Appellees argued, and the trial court agreed, that her experience in the TCI lawsuit was directly relevant to her "knowledge, ability, experience, [and] capacity" regarding contingency fee agreements and settlements. The trial court commented that the "facts of the underlying case" might not be relevant, but "the fact that . . . she's been through litigation . . . would be relevant to this issue." The trial court limited the scope of the evidence to Cunningham's experience with aspects of the civil litigation system that were at issue in the trial, including contingency fee agreements and settlements. The trial court did not permit questioning about the facts or details of the underlying lawsuits. The trial court also prohibited Appellees from introducing pleadings from Cunningham's prior lawsuits.

We perceive no abuse of discretion. *See Gee,* 765 S.W.2d at 396. Given that Cunningham filed a DTPA claim against Appellees and the trial court found that evidence of Cunningham's knowledge and previous litigation experience went directly to her claim, the trial court's decision was neither arbitrary nor unreasonable. *See Smithson,* 665 S.W.2d at 443.

*Evidence of Criminal History*

Next, Cunningham complains that the trial court erred in admitting evidence about her criminal past. She points to evidence of a prior arrest for failure to identify herself to a police officer,

the copy of the arrest warrant issued in connection with her arrest, and the charges against her for writing forty-two hot checks. She contends that the evidence was irrelevant and in violation of Rules 404(b), 608(a) and (b), and 609. Appellees again counter that her arguments on appeal do not comport with her objections at trial. Again, we must agree. Because her trial objection was limited to Rule 404, our review will likewise be limited. TEX.R.APP.P. 33.1.

"Relevant evidence" is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX.R.EVID. 401. Rule 404 prohibits a party from injecting evidence of other wrongs or acts to show that the witness acted in conformity therewith. TEX.R.EVID. 404(b). The evidence may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX.R.EVID. 404(b).

Appellees enumerate four reasons why the evidence was admissible:

- Cunningham's criminal history constituted a major portion of the underlying Classic trial. During that trial, Cunningham testified about the arrests, charges, and convictions. Therefore, this evidence was relevant to the malpractice case because Cunningham was asking the jury to put themselves in the shoes of the Classic jury in order to determine what they would have awarded in attorneys' fees if Jordan had been allowed to testify.

- The evidence was relevant to multiple claims at issue. For example, Appellees asserted an alternative claim for quantum meruit, seeking recovery for the "compensable work" and "valuable services" they provided in the Classic case. Therefore, they were entitled to offer evidence that they overcame obstacles created by Cunningham's incomplete, evasive, and inaccurate information regarding her criminal past. Appellees argue that they were required to do extra work to minimize the negative consequences of that evidence in the Classic litigation.

- The evidence was relevant to Cunningham's breach of fiduciary duty claim and, in particular, to her complaints regarding their recommendation to settle the Classic lawsuit. Because her criminal history came out at trial, their recommendation to quickly settle the vulnerable DTPA jury award was sound and in Cunningham's best interest.

•  The evidence was admissible to impeach Cunningham's memory. Cunningham, at various times, purported not to remember her criminal history.

We also emphasize that Cunningham failed to object to the introduction of trial transcripts from the Classic litigation, including reference to the "failure to identify" and "hot check" charges. Not only did Cunningham's attorney not object, he affirmatively stated that he had "no objection". He also introduced exhibits reflecting these same charges. We conclude that the trial court did not abuse its discretion. *See Gee,* 765 S.W.2d at 396. For these reasons, we overrule Point of Error Three.

## *BATSON/EDMONSON* CHALLENGES

In Point of Error Four, Cunningham argues that the trial court erred in overruling her *Batson/Edmonson* challenges to Appellees' peremptory strikes of venire persons Eric Oliver and Richard Askew. In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that the Due Process Clause of the 14th Amendment is violated if prospective jurors are excluded from service in criminal trials on the basis of race or ethnicity. This holding has been extended to civil cases. *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). There, the court emphasized that "[r]acial discrimination has no place in the courtroom, whether the proceeding is civil or criminal," and that "courts must entertain a challenge to a private litigant's racially discriminatory use of peremptory challenges in a civil trial." *Edmonson*, 500 U.S. at 630, 111 S.Ct. at 2088. Texas adopted the *Edmonson* rationale in *Powers v. Palacios*, 813 S.W.2d 489 (Tex. 1991).

### *Standard of Review*

We review a trial court's ruling on an *Edmonson* challenge for abuse of discretion. *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997). In the context of an *Edmonson* challenge, the abuse

of discretion standard is similar to the federal standard of "clearly erroneous." *Id*.; *cf. Hernandez v. New York*, 500 U.S. 352, 369 (1991)(under the "clearly erroneous" standard, a trial court's finding will not be disturbed unless the appellate court is "left with the definite and firm conviction that a mistake ha[d] been committed"). A trial court's decision on discriminatory intent is given "great deference because a determination of the issue of purposeful discrimination depends on assessing the credibility and the content of the striking party's explanation and all other relevant facts and circumstances." *Cain v. Pruett*, 938 S.W.2d 152, 161 (Tex.App.--Dallas 1996, no writ).

*Relevant Facts*

Eight of the first twenty five venire persons were African-Americans, as is Cunningham. Cunningham contends that Appellees challenged all eight for cause and then exercised three of their six peremptory challenges to exclude those African-Americans who were not stricken for cause. Cunningham lodged a *Batson* challenge with regard to Eric Oliver and Richard Askew and Appellees were given an opportunity to provide race-neutral explanations for the strikes. Appellees reminded the court that both men had been challenged for cause, albeit unsuccessfully. Counsel then explained Oliver was struck because he was favoring Cunningham before hearing any of the evidence. Askew was struck because of his attitude toward attorneys, legal fees, his hostile demeanor, and his body language.

The jurors were required to complete written questionnaires before voir dire began. Pertinent to our discussion, Question 24 asked:

Do you agree or disagree with each of the following statements? (Please check one box for each statement).

a. Being a lawyer is an honorable profession

b. Lawyers care about their clients

c. Lawyers are honest.

d. Clients are honest.

e. Lawyers make a positive contribution to society.

| | Agree | Disagree | need more info |
|---|---|---|---|
| f. In a case between a law firm and a former client, I would lean toward or favor the former client. | ▢Agree | ▢Disagree | ▢need more info |
| | ▢Agree | ▢Disagree | ▢need more info |
| g. In a case between a law firm and a former client, I would lean toward or favor the law firm. | ▢Agree | ▢Disagree | ▢need more info |
| | ▢Agree | ▢Disagree | ▢need more info |
| h. In general, fees that lawyers charge their clients are fair. | ▢Agree | ▢Disagree | ▢need more info |
| | ▢Agree | ▢Disagree | ▢need more info |
| | ▢Agree | ▢Disagree | ▢need more info |
| | ▢Agree | ▢Disagree | ▢need more info |

Question 28 asked:

Generally speaking, which of the following best describes your opinion of attorneys?

▢ Very favorable
▢ Favorable
▢ Unfavorable
▢ Very unfavorable
▢ No opinion

*Venire Person Oliver*

The record reveals the following exchange between defense counsel and Oliver:

Question [by Ms. Blue]: Search your hearts and ask yourself, based on what I've heard so far, I am favoring Ms. Cunningham? Or do you think that the lawyers have done something wrong, that they were negligent based on what you've heard? Can we have this side of the room go ahead and raise your card. Because it's so important that you say if you feel that way. Because what everybody in this room wants to make sure is that you're the right juror for this case. So based on what you've heard, is anybody leaning toward Mrs. Cunningham's side of the case?

Okay. Let's go over here first. Anybody want to raise your card?

Okay. This side. Number 7. Thank you. God bless you. Thank you so much for your honesty.

* * * * *

Yes.  And Number 7, Mr. Oliver?

Answer [by Oliver]: Yes.

Q: And thank you so much.  The same question.  You have a prejudgment, I think that's the words that Mr. Pennington used.  You have a prejudgment toward Ms. Cunningham's case and the fact that you already believe that the lawyers did something wrong, correct?

A: From the information that's been given thus far, yes.

Q: Okay.  And that's a good thing.  That's a good thing for you to tell us because if you believe that, we just need to know that.  If you started with a prejudgment towards Ms. Cunningham's case and you feel strongly about it, would that be a fair statement?

A: With the information given, yes.

Q: Right.  And no matter who asks you the question 20 different ways will your answer be the same?

A: Unless I get more information, yes.

* * * * *

Question [by Ms. Aldous]: You are Mr. Oliver, Juror Number 7?

Answer [by Oliver]: Yes.

Q: And what you're saying, Mr. Oliver, is that before you hear any of the evidence in this case, you have already decided you were going to give Ms. Cunningham a head start; fair enough?

A: [Nods affirmatively].

Q: Did you get that, Your Honor?  He said yes.

The Court: I did not hear him.

A: Yes.

* * * * *

Question [by Ms. Blue]: And so you're just saying that you've already decided the

Plaintiff, you have a prejudgment toward the Plaintiff?

Answer [by Oliver]: I answered with the evidence that has been presented at this point, yes. I'm open to any other evidence to be presented.

Q: Okay.

A: Yes.

Q: And understanding there wasn't evidence presented, but what the law, what this part of the trial is, is to figure out if you sit in the box, you have to just say, hey, I'm equal for everybody. And knowing that Ms. Cunningham is suing a bunch a [sic] lawyers, before you've heard any evidence, are you're [sic] starting out with a prejudgment toward the Plaintiff, which is good if you feel that way. And you do feel that way?

A: Yes.

* * * * *

Q: Okay. It says – just for the record, I'm looking at your questionnaire.

A: Uh-huh.

Q: And when you filled this out you certainly were honest and open, and so you're telling the Judge that in a case between a law firm and the former client I would lean toward or favor the former client. And you said agreed.

A: Yes.

Q: Is that right?

A: Yes.

A: And that's because you felt strongly about it, I assume?

Q: Yes. Correct.

Appellees struck Oliver because he repeatedly professed a bias in favor of Cunningham's case. While Cunningham argues that other potential jurors gave similar responses and were not stricken, Appellees counter that she made no complaint of disparate treatment in the trial court. On appeal, she points to venire members 13, 27, and 35, all of whom ended up on the jury and one of

whom believed a 40% contingency was too much.  But no other panelist acknowledged – as Oliver did – having a "prejudgment towards [Cunningham's] case and . . . already believ[ing] that the lawyers did something wrong."  None of the others stated that "before [they] hear[d] any of the evidence in this case, [they] ha[d] already decided [they] were going to give [Cunningham] a head start." None of the others admitted they were "favoring the Plaintiff" and that "no matter who ask[ed] [them], [they were] not going to change [their] mind[s]." Additionally, Oliver insisted that Appellees' alleged negligence in failing to submit an attorneys' fee question to the jury "should not be excused."

*Vernire Person Askew*

Of all of the prospective jurors, Askew expressed the most unfavorable view of lawyers.  He disagreed with the notion (1) that the practice of law is an honorable profession, (2) that lawyers care about their clients, (3) that attorneys are honest, and (4) that lawyers charge fair fees.  He held an "unfavorable" opinion of attorneys.  He believed that attorneys should not "be let off the hook" for failing to submit an attorney's fees question to a jury because "they're professionals [and] should have known" that it would constitute negligence not to do so.  Finally, Askew admitted that "[g]iven [his] feelings about lawyers, and given the fact there's a bunch of lawyers on one side, and an individual on the other," it would cause him to "pause a little bit."

In the trial court, Cunningham alleged disparate treatment with regard to venire member Bobby Golightley, whose juror questionnaire is included in the record.  On appeal, she compares Askew to Claire Lee, whose juror information is not contained in the record.  From the voir dire we can ascertain this much.  Claire Lee disagreed that lawyers care about their clients and she also expressed an unfavorable opinion of attorneys in general.  Yet she believed that if a lawyer put something unethical in a contract, but "he's forthright and honest with the client that this is what he's

going to do and the client agrees with that and accepts that as it stands and signs, then I think [the contract] should be okay." Lee agreed that "[a] client is responsible for their choices, decisions, and actions." We also note that Askew was Juror 24 while Lee was Juror 27.

The record supports race-neutral reasons for Appellees' peremptory strikes against both Oliver and Askew. We conclude that the trial court did not abuse its discretion in overruling Cunningham's *Batson/Edmonson* challenges. We thus overrule Point of Error Four. Having found no error, we affirm the judgment of the trial court.

January 13, 2010

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.