**Opinion issued August 28, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00676-CV

————————————

**STANLEY A. TENER, Appellant**

**V.**

**SHORT CARTER MORRIS, LLP AND ADAM J. MORRIS, Appellees**

---

**On Appeal from the 151st District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-45023**

---

## MEMORANDUM OPINION ON REHEARING

Appellant, Stanley A. Tener ("Tener"), has filed a motion for rehearing of our March 27, 2014 opinion and judgment. We deny the motion for rehearing, withdraw our opinion and judgment of March 27, 2014, and issue the following opinion and a new judgment in their stead.

Tener challenges the trial court's rendition of summary judgment in favor of appellees, Short Carter Morris, LLP ("SCM") and Adam J. Morris, in his suit against them for negligence and breach of fiduciary duty. In three issues, Tener contends that the trial court erred in granting Morris and SCM summary judgment and overruling his objections to their summary-judgment evidence.

We affirm.

## Background

In his first amended petition, Tener alleges that Morris, while employed at SCM, represented him in a divorce proceeding against his wife, Sezanne A. Tener. Included in the community estate to be divided was real property located in Aspen, Colorado, which the Teners "occupied as their marital residence during most of their marriage." Sezanne eventually moved to Houston and subsequently sued Tener, who asserts that he has never resided in Texas, for divorce.

Tener claims that Morris and SCM acted negligently in:

(a)   [F]ailing to prepare and properly present [his] claims at a final trial as to the Colorado property.

(b)   [F]ailing to ensure that the underlying case . . . was litigated in Colorado instead of Texas.

(c)   [F]ailing to supply to the trial [c]ourt pleading and proof that Colorado law holds that any increase of property value above $315,000 (purchase price) is marital property and subject to division under Colorado marital law.

(d)   [F]ailing to competently prepare and present [his] claims to the Court in regard to the Colorado property.

2

(e)     [F]iling documents waiving any further right [to contest] personal jurisdiction . . . .

(f)     [F]ailing to offer proof that the Colorado property was purchased for $315,000.

(g)     [F]ailing to plead and prove a marital property claim of $2,185,000.

(h)     [F]ailing to prove the value of the Colorado property at the time of the divorce in June and July, 2009 of at least $2,500,000.

(i)     [A]ccepting the benefits of the requested affirmative relief.

(j)     [C]onsenting to personal jurisdiction and [allowing] Texas to apply Texas law to Colorado real property.

(k)     [S]tipulating that the Colorado real property . . . was [Sezanne's] separate property . . . even though it was purchased during the marriage for $315,000.

(l)     [F]ailing to plead and prove Colorado marital property law and the purchase price of the Colorado real property which would have greatly enhanced [his] and the community's recovery ($2,185,000).

(m)     [F]ailing to prove the value of the real property at the time of the divorce under Colorado law which would have greatly enhanced [his] recovery.

(n)     [F]ailing to plead Colorado marital property law pursuant to Texas Rule[] of Evidence 202.

(o)     [F]ailing to prove Colorado real and marital property law pursuant to Texas Rule[] of Evidence 202.

(p)     [S]tipulating that [the Colorado property] was [Sezanne's] separate property.

(q)     [T]elling [Stanley] that "he had to" stipulate that [the Colorado property] was [Sezanne's] separate property.

(r)     [P]ursuing claims under Texas law for economic contribution instead of Colorado law § 14-10-113 for the increase in the value of [the Colorado property] from November 7, 1991 through September of 2009.

(s)     [F]ailing to make a claim for $2,185,000 on behalf of the community estate for the increase in value of [the Colorado property].

(t)     [F]ailing to make a claim for $1,092,500 for [Stanley's] portion of the increase in value of [the Colorado property].

(u)     [F]ailing to plead and prove Colorado law § 14-10-113 pursuant to Texas Civil Rule[] of Evidence 202.

Tener further alleges that had Morris and SCM pleaded and proved the applicability of Colorado law, instead of Texas law, the divorce court would have been required to follow Colorado law and he would have had a claim in the Colorado property worth $2,185,000. He notes that the divorce court, pursuant to Texas law, entered the following offsets against him: (1) $127,531.49 in enhancement contributions; (2) $400,000 in use and benefit expenses; (3) $41,600 for time, toil and effort; and (4) $255,062.92 in separate property reimbursement. And Tener asserts that these offsets do not exist under Colorado law. He seeks to recover from Morris and SCM as negligence damages: (1) the total amount of the offsets; (2) $2,185,000, the value of the Colorado property; (3) $315,000, the purchase price of the Colorado property; (4) mental anguish damages; and (5) his attorney's fees.

In regard to his claim for breach of fiduciary duty, Tener alleges that Morris and SCM breached their fiduciary duties by committing the above negligent practices and accepting his divorce case "when they had insufficient experience to

4

do so and were otherwise unready or unable to do so." He asserts that Morris and SCM "were not competent to handle" his divorce proceedings.

In their original answer, Morris and SCM generally denied Tener's allegations and asserted that his claims were "caused by the negligence and carelessness of responsible third parties" over which they had no control. They filed a matter-of-law and no-evidence summary-judgment motion, asserting that, in the divorce proceeding, Tener, using another attorney, Kathryn Geiger,[1] filed a special appearance and contested the divorce court's personal jurisdiction over him. Morris and SCM contended that they could not have caused Tener any damages arising from a waiver of a challenge to the divorce court's personal jurisdiction. Morris and SCM further argued that Tener was himself at fault because another attorney had handled his appeal of the case, which was dismissed due to Tener's failure to prove his indigent status.[2] And Morris and SCM asserted that Tener's own testimony at the special appearance demonstrated that the court properly exercised personal jurisdiction over him. Finally, Morris and SCM argued that their performance could not have fallen below the pertinent standard of care because "Sezanne and [Tener's] son had lived in Houston for at least four years before the divorce" and, thus, the divorce court was required to apply Texas,

---

[1] Tener initially named Geiger as a defendant in the instant suit, but the trial court later severed his claims against her.

[2] *See Tener v. Arlitt*, No. 01-09-01091-CV, 2011 WL 1755614, at *1 (Tex. App.—Houston [1st Dist.] May 5, 2011, no pet.) (mem. op.).

5

not Colorado law, to the property claims. In regard to Tener's claim for breach of fiduciary duty, Morris and SCM asserted that the claim was simply a reassertion of his negligence claim.

Morris and SCM attached to their summary-judgment motion a transcript of the divorce court's hearing on Tener's special appearance, which shows that he was then represented by Geiger. They also attached to their motion the Teners' joint tax returns from 2000 to 2006, wherein Tener had represented "Houston, Texas" as the couple's residence, and the divorce court's final decree of divorce.

In its final decree of divorce, the divorce court concluded that Tener was "guilty of cruel treatment" toward Sezanne and their child and Sezanne "should be awarded a disproportionate share of the community estate based upon the cruelty of" Tener, the "ill health" of Sezanne, Sezanne's need for future support, and "the reimbursement claims which are detailed" as having benefitted Tener and the community estate. The divorce court also concluded that, in regard to the Colorado property, which it described as Sezanne's "separate property residence," the community had received reimbursement in the amount of $255,062.98 from the use and benefit of the property. And the divorce court concluded that although Tener had "expended time, toil, and effort," which had benefited the Colorado property in the amount of $41,600, this benefit was offset by the fact that Tener had "benefited solely and individually" from the use of the Colorado property in an

amount equal to $400,000. In its findings of fact, the divorce court found that "Texas was the last marital residence of" Tener and Sezanne within two years before she had filed the divorce suit on September 5, 2007. The divorce court further found that the Colorado property was Sezanne's separate property and Tener had lived on the property "rent-free with utilities and various other expenses including all insurance and taxes" paid by Sezanne.

Finally, Morris and SCM attached to their summary-judgment motion Tener's response to a motion to dismiss his petition for dissolution, which he had filed in Colorado while represented by McGuane and Hogan, LLP. In his response, Tener noted,

> Husband requests only that a decree of dissolution be entered and that the Colorado property be divided in the Colorado action. . . . The property, on 2.683 acres, was purchased approximately six months after the marriage of the parties for $315,000. The purchase price was paid from Wife's separate property and title has always been solely in her name. However, during the marriage, Husband's earned income and his personal labor and services were contributed in significant amounts to the upkeep and improvement of the property. Since the parties separated, Husband has continued to live in the home, maintain it, and manage the rental apartment that is also on the premises.

Tener made several objections to Morris and SCM' summary-judgment evidence, arguing, among other points, that because the opinion of the court of appeals concerning his special appearance, the divorce court's findings of fact and conclusions of law, and the Teners' joint tax returns were not authenticated or self-authenticated, they constituted hearsay. Tener also filed a response to Morris and

7

SCM' summary-judgment motion, asserting that genuine issues of material fact existed as to each element of his claims.

Tener attached to his response the affidavits of Mark J. Carroll and Jeremy M. Bernstein. In his affidavit, Carroll testified that it was his opinion that Morris had breached the pertinent standard of care owed to Tener in his divorce suit, causing him damages of $1,075,163.86. Carroll's review of the divorce court documents revealed that Sezanne had purchased the Colorado property for $315,000 in her name, the property, at the time of the divorce, had a fair market value of $2,500,000, and Tener, while represented by Morris, had agreed to a partial summary judgment that the Colorado property was Sezanne's separate property. Carroll opined that an ordinary prudent lawyer would have asked the divorce court, in regard to the Colorado property, to take judicial notice of and apply Colorado law, which provides that an increase in the value of separate property during a marriage is "marital property to be divided by the spouses without regard to marital misconduct." As a result, the community estate would have increased by $2,150,327.72, or the increase in value of the Colorado property during the Teners' marriage, to be divided equally between the parties. Because Colorado "has the most significant relationship to the particular substantive issue," Carroll asserted that a Texas court "probably would have applied Colorado law upon request."

In his affidavit, Bernstein testified that, under Colorado law, "any increase in value of separate property is marital property" and "the increase in value, no matter the reason[,] is marital property subject to equitable division."

Tener also attached to his response the divorce court's "Order on Motion for Summary Judgment Regarding Characterization of the Aspen Home," in which it concluded that Tener had stipulated the Colorado property to be Sezanne's separate property.

In their reply, Morris and SCM asserted that the undisputed material facts established that the divorce court was required to apply Texas law.[3] And they asserted that the opinion of the court of appeals and the divorce court's findings of fact and conclusions of law were admissible as authenticated public records that fell within a hearsay exception for public records and reports.[4] In regard to the Teners' joint tax returns, Morris and SCM argued that they were admissible into evidence because they were signed by Tener himself.

---

[3] Specifically, Morris and SCM cited the following provision of the Texas Family Code:

> (b) In a decree of divorce or annulment, the court shall award to a spouse the following real and personal property, wherever situated, as the separate property of the spouse:
>
> (1) property that was acquired by the spouse while domiciled in another state and that would have been the spouse's separate property if the spouse had been domiciled in this state at the time of acquisition[.]

TEX. FAM. CODE ANN. § 7.002(b) (Vernon 2006).

[4] *See* TEX. R. EVID. 803(8).

9

The trial court overruled Tener's objections as to the opinion of the court of appeals, the divorce court's findings of fact and conclusions of law, and the Teners' joint tax returns. It then granted Morris and SCM's matter-of-law summary- judgment motion on Tener's claims, and it denied their no-evidence summary- judgment motion.

## Standard of Review

To prevail on a summary-judgment motion, a movant has the burden of establishing that it is entitled to judgment as a matter of law and there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a defendant moves for summary judgment, it must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of its affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey*, 900 S.W.2d at 341; *Yazdchi v. Bank One, Tex., N.A.*, 177 S.W.3d 399, 404 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). When deciding whether there is a disputed, material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Every reasonable inference must be indulged in favor of the non-movant and any doubts must be resolved in his favor. *Id.* at 549.

10

## Legal Malpractice

In his first issue, Tener argues that the trial court erred in granting Morris and SCM's summary-judgment motion because it failed "to include expert testimony addressing the standard of care, breach, causation, or damages" and it did not address all of his liability theories. Tener further asserts that Morris and SCM "did not conclusively establish" that the divorce court was required to apply Texas law, his expert witness established a fact issue as to whether Morris and SCM breached their standard of care and caused Tener's damages, and fact issues exist as to whether Tener resided in Colorado or Texas.

### *Morris and SCM's Summary-Judgment Motion*

Tener first argues that Morris and SCM failed to meet their summary-judgment burden because they did not include any expert testimony and did not address all of his theories of liability, namely, Morris and SCM' negligence in filing documents waiving any further right to contest personal jurisdiction, accepting the benefits of requested affirmative relief, and stipulating that the Colorado property was Sezanne's separate property without Tener's consent.

In their summary-judgment motion, Morris and SCM asserted that Tener lost his special appearance due to the actions of Geiger, who represented him at the special-appearance hearing, and not due to any acts or omissions of Morris. Morris and SCM specifically argued that Morris's actions, taken after the divorce court

11

had overruled Tener's objection to jurisdiction, including the filing of a counter-claim and seeking affirmative relief, did not constitute a waiver of Tener's right to appeal the divorce court's special-appearance order.

In Texas,

> If the objection to jurisdiction is overruled, *the objecting party may thereafter appear generally for any purpose.* Any such special appearance or such general appearance *shall not be deemed a waiver of the objection to jurisdiction* when the objecting party or subject matter is not amenable to process issued by the courts of this State.

TEX. R. CIV. P. 120a(4) (emphasis added); *see also Aduli v. Aduli*, 368 S.W.3d 805, 813 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding that party could not have waived challenge to trial court's denial of his special appearance even though he had entered into agreed temporary orders establishing trial court's jurisdiction because special appearance preserved error); *Equitable Prod. Co. v. Canales-Trevino*, 136 S.W.3d 235, 238 (Tex. App.—San Antonio 2004, pet. denied) (holding that party's filing of general appearance did not waive error in objection to jurisdiction because trial court had already denied special appearance). Thus, in their summary-judgment motion, Morris and SCM argued and established that Morris did not waive Tener's challenge to the divorce court's ruling on his special appearance.

Furthermore, although Morris and SCM did not attach any expert testimony to their summary-judgment motion, they asserted, as a matter of law, that the

divorce court was required, under the facts of the case, to apply Texas law to the division of the estate. Morris and SCM argued, thus, that Morris could not have caused Tener any damages in not moving the divorce court to apply Colorado law or in his stipulation that the Colorado property constituted Sezanne's separate property. And Tener has not offered any authority establishing that Morris and SCM in this case needed to attach expert testimony to their summary-judgment motion in order to prove the legal issue of whether Texas or Colorado law applied to the division of the estate. An expert may not testify on pure questions of law. *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 94 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (citing *Mega Child Care, Inc. v. Tex. Dep't of Protective & Regulatory Servs.*, 29 S.W.3d 303, 309 (Tex. App.—Houston [14th Dist.] 2000, no pet.)). Thus, the question was a legal issue for the court to decide.

### Genuine Issues of Material Fact

Tener asserts that Morris and SCM did not conclusively establish that the divorce court was required to apply Texas law, rather than Colorado law, to the division of the estate.

A legal malpractice action is based on negligence. *Cunningham v. Hughes & Luce, L.L.P.*, 312 S.W.3d 62, 67 (Tex. App.—El Paso 2010, no pet.) (citing *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989)). A plaintiff bringing a legal malpractice claim must show that "(1) the attorney owed the plaintiff a duty,

(2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred." *Grider v. Mike O'Brien, P.C.*, 260 S.W.3d 49, 55 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (quoting *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 117 (Tex. 2004)). If the legal malpractice claim is based on the attorney's acts during prior litigation, the plaintiff must prove that, but for the attorney's breach of duty, the plaintiff would have been successful in the prior case. *Id.* (citing *Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex. App.—Houston [1st Dist.] 1998, pet. denied)); *see also Heath v. Herron*, 732 S.W.2d 748, 753 (Tex. App.—Houston [14th Dist.] 1987, writ denied) (stating that defendant in underlying case claiming malpractice must show defense "that, if proved, would cause a different result upon retrial of the case"). The causation burden in this type of legal-malpractice claim has been called the "suit-within-a-suit" requirement. *See Greathouse*, 982 S.W.2d at 173. The suit-within-a-suit causation requirement applies both to claims for legal malpractice and claims for a former attorney's alleged breach of fiduciary duty when the damages sought are based on the attorney's wrongful conduct in prior litigation. *See Finger v. Ray*, 326 S.W.3d 285, 291–92 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Greathouse*, 982 S.W.2d at 173.

Generally, expert testimony is required to prove causation in a legal malpractice suit. *See Alexander*, 146 S.W.3d at 119–20. Proximate cause has two

14

elements: cause in fact and foreseeability. *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). "These elements cannot be established by mere conjecture, guess, or speculation." *Id.* (quoting *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995)). The test for cause in fact is whether the act or omission constituted a substantial factor in causing the injury without which the harm would not have occurred. *Id.*

As they did in their summary-judgment motion, Morris and SCM argue that Morris could not have breached a duty to Tener or caused him any damages by not urging the trial court to apply Colorado law to the distribution of the Colorado property because the trial court was required to apply Texas law. Tener asserts that Morris and SCM "erroneously assume[] that because the family court decided it had personal jurisdiction," it "had to" apply Texas law. And he asserts that "Texas has long applied the Restatement's 'most significant relationship test' . . . to determine which jurisdiction's substantive law should govern in a case," citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984) (adopting Restatement (Second) of Conflict of Laws § 6 (1971)).

Generally, once a trial court in a Texas divorce proceeding establishes personal jurisdiction over both spouses, it applies Texas law in making its division of property, even if the property is located in another state. *See Griffith v. Griffith*, 341 S.W.3d 43, 57 (Tex. App.—San Antonio 2011, no pet.) (applying Texas

15

Family Code to divide real property in Florida); *Ismail v. Ismail*, 702 S.W.2d 216, 222 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) (declining to apply Egyptian law); *see also Nieto v. Nieto*, No. 04-11-00807-CV, 2013 WL 1850780, at *14 (Tex. App.—San Antonio May 1, 2013, pet. denied) (mem. op.) (declining to apply laws of Mexico and noting, "The divorce was filed in Texas and the trial court found the parties met the domiciliary and residence requirements . . . . Therefore, we apply Texas law."); *Dawson-Austin v. Austin*, 968 S.W.2d 319, 331 (Tex. 1998) (Baker, J., dissenting) (noting once trial court obtained personal jurisdiction over parties, "divisibility" of divorce "turns on Texas law").

As explained by Professor J. Thomas Oldham, a number of jurisdictions in the United States have applied the "total mutability" approach in dividing property in divorce proceedings, as follows:

> Under this approach, all of the spouses' marital property rights at divorce are to be determined by the law of the jurisdiction where the divorce is granted, regardless of when or where their property was acquired. Notice that, under this approach (as contrasted with partial mutability), property accumulated while living elsewhere is divided based on forum law. . . .
>
> This approach has the same benefit as total immutability in that the court has to apply the law of only one jurisdiction to resolve the parties' rights. And, more importantly, the law to be applied is the law of the forum, a set of laws one would hope the court would be familiar with and competent to administer. So, this rule presumably should be efficient for the court and inexpensive for the parties, since they would avoid having to retain experts to explain the marital property rules of another jurisdiction.

16

J. Thomas Oldham, *What if the Beckhams Move to L.A. and Divorce? Marital Property Rights of Mobile Spouses when They Divorce in the United States*, 42 FAM. L. Q. 263, 268–69 (2008). Texas utilizes this approach, and this Court has applied it. *See id.* (citing *Ismail*, 702 S.W.2d 216).

Texas Family Code section 7.001 provides that "[i]n a decree of divorce or annulment, the court *shall order* a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE ANN. § 7.001 (Vernon 2006) (emphasis added). And the trial court must assign any separate property to its respective owner. *See Cameron v. Cameron*, 641 S.W.2d 210, 216 (Tex. 1982); *see also* TEX. CONST. art. XVI, § 15; TEX. FAM. CODE ANN. § 3.001 (Vernon 2006).

Further, section 7.002, which governs "Division and Disposition of Certain Property Under Special Circumstances," provides

(a)     In addition to the division of the estate of the parties required by Section 7.001, . . . the [trial] court shall order a division of the following real and personal property, wherever situated, in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage:

(1)     property that was acquired by either spouse while domiciled elsewhere and that would have been *community* property if the spouse who acquired the property had been domiciled in this state at the time of acquisition[.]

. . . .

17

(b)    . . . [And] the court *shall award* to a spouse the following real and personal property, *wherever situated*, as the *separate property* of the spouse:

(1)    property that was acquired by the spouse *while domiciled in another state* and that would have been the spouse's separate property if the spouse had been domiciled in this state at the time of acquisition[.]

. . . .

TEX. FAM. CODE ANN. § 7.002(a), (b) (Vernon 2006) (emphasis added).

In *Cameron*, the Texas Supreme Court recognized that "two different systems of marital property regimes exist in the various states:  common law and community property," and it explained that in enacting Texas Family Code section 7.002(a),[5] "the legislature established a workable, uncomplicated framework for effectuating just divisions of common law marital property on divorce in Texas." 641 S.W.2d at 222.  The court explained that there was no need to "embark[] on a cumbersome, conflict of laws approach" when dividing property acquired in various jurisdictions.  *Id.* (citing J. Thomas Oldham, *Property Division in a Texas Divorce of a Migrant Spouse, Heads He Wins, Tails She Loses*, 19 HOUS. L. REV. 1 (1981)).

This court, in reviewing a divorce court's distribution of property in *Ismail*, held that "[s]ince the [divorce] court properly applied [section 7.002(a)], there was

---

[5]    In 1997, the Texas legislature re-codified Texas Family Code section 3.63(a) and 3.63(b) into sections 7.001 and 7.002(a).  *See* Act of April 17, 1997, 75th Leg., R.S., ch. 7, § 1, 1997 Tex. Gen. Laws 33, 33 (current version at TEX. FAM. CODE ANN. §§ 7.001, 7.002(a) (Vernon 2006)).  The language of these sections did not substantively change.

18

no error in refusing to apply Egyptian law." 702 S.W.2d at 222. In *Ismail*, the defendant argued that the divorce court had erred in applying Texas law "because applicable choice of law principles, both traditional and those contained in the Restatement (Second) of Conflicts, dictate[d] that th[e] case be determined under Egyptian law." *Id.* We explained that "[p]roperty acquired by a spouse when domiciled in another jurisdiction was, under pre-*Cameron* common law, characterized according to the previous domicile's laws." *Id.* "The enactment of [section 7.002], however, obviate[d] the need to apply this anachronistic conflict-of-laws principle." *Id.* (citing *Cameron*, 641 S.W.2d at 222). We further explained:

> [Section 7.002(a)] constitutes a rejection of, or rather a substitution for, the standard conflict-of-laws solution. This remedy has become unworkable in modern mobile America. In short, a legislative solution has been provided to cut through the tangled jungle that has necessarily grown from the inherent limitations of the judge-created answer supplied by traditional conflict-of-laws theory.

*Id.* (citation omitted).

In support of his argument, Tener relies on *Dawson-Austin v. Austin*, 920 S.W.2d 776 (Tex. App.—Dallas 1996), *rev'd on other grounds*, 968 S.W.2d 319 (Tex. 1998). In *Dawson-Austin*, a divorcing couple disputed whether Texas or Minnesota law applied to the division of certain shares of stock that the husband had purchased before marriage. *Id.* at 787–88. Under the laws of each state, the shares were the husband's property to the extent of their value at the time of

19

marriage. *Id.* at 788. Under Texas law, the increase in the value of the shares due to market forces that occurred during the marriage was considered an inherent part of the stock and the husband's separate property. *Id.* Under Minnesota law, however, the appreciation in value was subject to equitable distribution on divorce. *Id.* at 788–89.

As section 7.002(b), which governs the distribution of separate property, did not yet exist, the husband argued that section 7.002(a), which solely governs *community* property, "operate[d] as a comprehensive choice-of-law provision in property characterization issues." *Id.* Reasoning that section 7.002(a) "act[ed] only to expand, not restrict, the definition of community property" and could not be interpreted "to expand the definition of separate property and thus restrict community property," the court concluded that the choice-of-law issue there was to be decided under the Restatement of Conflict of Laws. *Id.* at 790 (citing *Duncan,* 665 S.W.2d at 420–21).

As Morris and SCM note, however, *Dawson-Austin* was decided before the legislature's 2003 enactment of section 7.002(b). And Morris and SCM assert, "The only reason [the court in] *Dawson*[-*Austin*] performed a Restatement analysis was because there was no . . . controlling statute yet in existence" regarding separate property.

20

Tener argues that section 7.002(b) is inapplicable because it applies only to property acquired by a spouse while domiciled in another state, and Morris and SCM did not conclusively establish that Sezanne was domiciled in Colorado at the time she purchased the Colorado property. Tener asserts that in a Texas divorce proceeding, the traditional conflict-of-laws approach applies to property acquired by a spouse while domiciled in Texas.

Applying Tener's approach would return us to the pre-*Cameron* "cumbersome, conflict of laws approach" to dividing property acquired in various jurisdictions. 641 S.W.2d at 222. The legislature's purpose in amending the statute was to "eliminate the need to apply this anachronistic conflict-of-laws principle" in dividing property located in different states. *Ismail*, 702 S.W.2d at 222 (citing *Cameron*, 641 S.W.2d at 222). Moreover, Tener's approach would lead to the absurd result of applying Texas law in dividing property located outside the state that a spouse acquires while domiciled *in another state*, but not necessarily applying Texas law to property located outside the state that a spouse acquires while domiciled *in Texas*. And Tener does not direct us to any authority to support his proposition.

Because Sezanne filed this divorce proceeding in Texas, and the trial court established personal jurisdiction over her and Tener, Texas law applied to the

21

division of their property. *See Griffith*, 341 S.W.3d at 57; *see also Nieto*, 2013 WL 1850780, at \*14; *Dawson-Austin*, 968 S.W.2d at 331.

Tener next argues that the trial court erred in granting Morris and SCM summary judgment because Carroll's affidavit established a fact issue as to each element of his legal-malpractice claim. Carroll testified that "Texas courts probably would have applied Colorado law upon request in this case because, under the choice of law standard in Texas, Colorado has the most significant relationship to the particular substantive issue." Again, however, an expert may not testify on pure questions of law. *Greenberg Traurig of N.Y., P.C.*, 161 S.W.3d at 94. Thus, to the extent that Carroll testified that Colorado law would have applied in the underlying divorce proceeding had Morris presented it to the divorce court, such testimony could not establish a fact issue.

Finally, Tener argues that the trial court erred in granting Morris and SCM summary judgment because fact issues exist as to whether he resided in Colorado or Texas. However, Tener's residence is irrelevant as to whether the Texas Family Code applied to the division of property in the divorce proceeding.

We hold that Morris and SCM, in their summary-judgment motion, conclusively established that they did not breach a duty to Tener to assert the application of Colorado law in the underling divorce proceeding or that any such failure caused Tener any damages. *See Grider*, 260 S.W.3d at 55.

We overrule Tener's first issue.

## Breach of Fiduciary Duty

In his second issue, Tener argues that the trial court erred in granting Morris and SCM summary judgment on his claim for breach of a fiduciary duty because genuine issues of material fact exist on the claim and Morris and SCM "made no attempt to meet their summary-judgment burden."

The elements of a claim for breach of fiduciary duty claim are (1) a fiduciary relationship between the plaintiff and defendant, (2) a breach by the defendant of his fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or benefit to the defendant as a result of the defendant's breach. *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

The "rule against fracturing" a legal-malpractice claim provides that a claimant for legal malpractice may not opportunistically transform such a negligence claim into separate non-negligence causes of action. *See Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 189 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Goffney v. Rabson*, 56 S.W.3d 186, 190 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). Other claims may still be advanced simultaneously, but a plaintiff must do more than merely reassert the same claim for legal malpractice under an alternative label. *See Duerr v. Brown*, 262 S.W.3d 63, 70 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

Not every claim for breach of a fiduciary duty is actionable separately from a claim for professional negligence. *See Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 429 (Tex. App.—Austin 2009, no pet.). To distinguish between the two, courts have generally held that a claim for breach of fiduciary duty focuses on whether an attorney obtained an improper benefit from representing the client, whereas a negligence claim focuses on whether an attorney represented a client with the requisite level of skill. *Id.* "An attorney breaches his fiduciary duty when he benefits improperly from the attorney-client relationship by, among other things, subordinating his client's interest to his own, retaining the client's funds, engaging in self-dealing, improperly using client confidences, failing to disclose conflicts of interest, or making misrepresentations to achieve these ends." *Gibson v. Ellis,* 126 S.W.3d 324, 330 (Tex. App.—Dallas 2004, no pet.). Such claims require allegations of self-dealing, deception, or misrepresentations that go beyond the mere negligence allegations in a malpractice action. *Trousdale v. Henry*, 261 S.W.3d 221, 228 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

Here, Tener asserts that Morris "affirmatively represented a material matter," namely, that Tener "had to" stipulate that the Colorado property was Sezanne's separate property. This is an assertion that Morris did not represent Tener with the requisite level of skill. Tener does not assert that Morris engaged in

24

self-dealing, deception, or misrepresentations that would go beyond a mere negligence allegation in a malpractice action. *See, e.g., Trousdale*, 261 S.W.3d at 227–28.

Tener further asserts that he should be given an opportunity to replead his claim for breach of a fiduciary duty, but he does not state how he would replead the claim or what he would add to his claims in order to distinguish it from his legal-malpractice claim. An opportunity to amend is available only when a defect is curable. *See Baylor Univ. v. Sonnichsen,* 221 S.W.3d 632, 635 (Tex. 2007). And Tener has not established how he would cure his pleadings, nor did he ask the trial court for an opportunity to replead his claims. Accordingly, we hold that the trial court did not err in granting Morris and SCM summary judgment on Tener's claim for breach of fiduciary duty.

We overrule Tener's second issue.

**Evidentiary Objections**

In his third issue, Tener argues that the trial court erred in overruling his objections to Morris and SCM's summary-judgment evidence, specifically, his objection to the opinion of the court of appeals dismissing his appeal for failure to prove indigent status, the divorce court's findings of fact and conclusions of law, and the Teners' joint tax returns. Tener asserts that the above evidence was "not authenticated" or "self-authenticating" and constituted hearsay.

25

Documents submitted as summary-judgment evidence must be sworn to or certified. TEX. R. CIV. P. 166a(f). Therefore, although court records from other proceedings are acceptable summary-judgment evidence, they must be certified or attested to under oath as authentic. *Gardner v. Martin*, 345 S.W.2d 274, 276–77 (Tex. 1961); *Soefje v. Jones*, 270 S.W.3d 617, 626 (Tex. App.—San Antonio 2008, no pet.).

Morris and SCM attached to their response to Tener's objections an affidavit from Morris. Morris testified that Exhibit A, which he received from the court of appeals, "is a true and correct copy of the court of appeals opinion in the underlying divorce case." He testified that Exhibit C, which he received from the divorce court when it was issued, is "a true and correct copy of the findings of fact and conclusions law." And Morris testified that Exhibit D, a copy of the Teners' joint tax returns, is a "true and correct" copy of the records, which were produced during discovery in the divorce case. While Morris represented Tener, Tener "admitted his signature [was] on the tax returns for the years 2000–2006" and the returns were "true and correct copies of those filed."

Thus, Morris swore to the authenticity of all of the summary-judgment evidence about which Tener complains. Accordingly, we hold that the trial court did not err in overruling Tener's objections to Morris and SCM's summary-judgment evidence.

26

We overrule Tener's third issue.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Brown, and Huddle.